681 A.2d 1254

COMMONWEALTH of Pennsylvania, Appellee,

v.

Gaye D. MORLEY, Appellant.

Supreme Court of Pennsylvania.

Argued April 29, 1996.

Decided July 29, 1996.

James D. Crawford, Philadelphia, Axel J. Johnson, White-house Station, NJ, for Gaye Morley.

Stuart B. Suss, West Chester, for Commonwealth.

Before FLAHERTY, ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

This is an appeal by allowance from the opinion and order of the Superior Court affirming the judgment of sentence of the Court of Common Pleas of Chester County. We granted allowance of appeal in this matter, and, for the following reasons, we now affirm.

On October 5, 1989, following an argument with her boyfriend, Stephen Lauritano ("Lauritano"), Gaye Morley ("Appellant") shot Lauritano in the back of the head; Lauritano subsequently died as a result of this wound.

Appellant entered a plea of guilty to a general charge of criminal homicide [1] in connection with the shooting death of Lauritano. At the degree of guilt hearing, Appellant asserted a diminished capacity defense, arguing that she had been in a depersonalized state at the time of the killing and was unable to formulate the specific intent to kill.

At the conclusion of the defense's case-in-chief, defense counsel joined a prosecution request to permit the Commonwealth's psychiatric expert, Dr. Kenneth Kool ("Dr. Kool"), to examine Appellant prior to his testifying as to her mental state. Pursuant to the agreement, the trial court entered an order appointing Dr. Kool to examine Appellant. After exam-

1. 18 Pa.C.S. § 2501.

ining Appellant, Dr. Kool testified at the degree of guilt hearing that in his professional opinion, Appellant was capable of forming the specific intent to kill on the day she killed Lauritano.

The trial court judge found Appellant guilty of first degree murder. Post-trial and supplemental post-trial motions were denied after an evidentiary hearing, and Appellant was sentenced to life imprisonment.

Appellant appealed to the Superior Court. In her appeal, Appellant asserted that Dr. Kool's examination of her, and his subsequent testimony concerning this examination, violated her privilege against self-incrimination; Appellant also raised ineffective assistance of counsel claims related to this issue. Finally, Appellant asserted that her trial counsel was ineffective for failing to call character witnesses on her behalf.

The Superior Court affirmed. Appellant filed an Application for Reargument; the Application was granted. The Superior Court, sitting *en banc*, once again affirmed the judgment of sentence. The Superior Court rejected Appellant's claim that her privilege against self-incrimination had been violated; the court also rejected her related ineffective assistance of counsel claims. Finally, the Superior Court also held that Appellant's trial counsel was not ineffective for failing to call character witnesses. Appellant filed a Petition for Allowance of Appeal, and we granted allocatur.

Appellant raises several issues for review. The first is whether the lower courts misapprehended the effect of Appellant's guilty plea to murder generally. Appellant argues that the lower courts treated her guilty plea as if it were a plea to first degree murder and then placed the burden on her to disprove that she had the specific intent to kill; she asserts that this impermissibly relieved the Commonwealth of establishing one of the elements of its case.

Appellant is correct in asserting that a plea to a general charge of homicide did not relieve the Commonwealth of its burden of proving specific intent to kill in order to make

out first degree murder. *See Commonwealth v. Mitchell,* 528 Pa. 546, 550, 599 A.2d 624, 626 (1991). She fails, however, to support her claim that the lower courts shifted this burden onto her. Appellant cites to no passage in the record or in either of the lower court opinions which would support her assertion. Furthermore, a review of the record makes it clear that the lower courts did not misapprehend which party bore the burden of proving specific intent. The trial court below stated that "the Commonwealth must ... show[ ], beyond a reasonable doubt, that [Appellant] shot Stephen Lauritano with the specific intent to kill him...." Tr. ct. slip op. at 33. The Superior Court also recognized that Appellant's plea was not a plea of guilty to first degree murder, and that the Commonwealth still bore the burden of making out all of the elements of first degree murder. *Morley,* 442 Pa.Super. at 186–187, 658 A.2d at 1362. Thus, this first claim fails.

■ In her next issue presented for review, Appellant raises two interrelated claims. First, she asserts that her federal and state constitutional rights against self-incrimination were violated when the trial court entered the order directing Dr. Kool to interview Appellant without apprising her of her right to remain silent.[2] Second, she contends that her counsel was ineffective for failing to inform her that she had the right to remain silent whenever Dr. Kool's examination concerned the criminal conduct with which she was charged.

■ Appellant's argument that the trial court violated her federal constitutional rights against self-incrimination when it ordered the examination by Dr. Kool must fail.

In the last fifteen years, there have been several cases from the United States Supreme Court which have discussed whether a criminal defendant retains his or her Fifth Amend-

**2.** In examining this issue, our scope of review is plenary, as it is with any review of questions of law. *Phillips v. A–Best Products Co.,* 542 Pa. 124, 130, 665 A.2d 1167, 1170 (1995).

ment privilege against self-incrimination [3] during a court ordered psychiatric exam of the defendant in a criminal trial.

The first such case is *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). In this capital murder case, the defendant had not attempted to introduce psychiatric evidence at trial. He had, however, been psychiatrically examined pursuant to court order to determine whether he was competent to stand trial.

At the sentencing phase, the prosecution called to the stand a psychiatrist who had previously examined defendant to determine whether the defendant was competent to stand trial. Basing his opinion on that interview with the defendant, the psychiatrist testified that the defendant posed a future danger to society. The issue of a defendant's "future dangerousness" is one of the critical issues that a jury in Texas must resolve in determining whether to sentence a defendant to death.

The defendant in *Smith* claimed that introduction of this testimony violated his privilege against self-incrimination. The United States Supreme Court agreed. The Court concluded that "[a] criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." *Id.* at 468, 101 S.Ct. at 1876, 68 L.Ed.2d at 372. The Supreme Court noted, however, that the result might have been different had the defendant raised an insanity defense and thereby put his mental status at issue. *Id.* at 465–466, 101 S.Ct. at 1874, 68 L.Ed.2d at 370–371.

The next in this line of cases is *Buchanan v. Kentucky*, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987). In *Buchanan*, the defendant attempted to establish the affirmative defense of "extreme emotional disturbance" by introducing several reports concerning his mental condition. In rebuttal, the prosecutor sought to introduce a report prepared by a Dr.

---

**3.** The Fifth Amendment is made applicable to the states through the Fourteenth Amendment. *South Dakota v. Neville*, 459 U.S. 553, 559, 103 S.Ct. 916, 920, 74 L.Ed.2d 748, 756 (1983).

Lange.   Dr. Lange had been appointed by the court, pursuant to a joint request by defense counsel and the prosecutor, to examine whether the defendant was competent to stand trial. One of the grounds on which the defendant objected to the introduction of Dr. Lange's report was that his Fifth Amendment privilege against self-incrimination would be violated because he had not been informed that the results could be used against him at trial.

The Court rejected the defendant's argument and found that the defendant's Fifth Amendment privilege was inapplicable in this situation.   The Court found that where

a defendant requests [a psychiatric] evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested.   The defendant would have no Fifth Amendment privilege against the introduction of this psychiatric testimony by the prosecution.

*Buchanan,* 483 U.S. at 422–423, 107 S.Ct. at 2917–2918, 97 L.Ed.2d at 355.

The Court's most recent case addressing court-ordered psychiatric examinations of a defendant who has raised a mental infirmity defense is *Powell v. Texas,* 492 U.S. 680, 109 S.Ct. 3146, 106 L.Ed.2d 551 (1989).   Although *Powell* focuses primarily on the scope of a defendant's Sixth Amendment rights during these psychiatric examinations, the Court did reaffirm its prior holdings concerning the viability of a defendant's privilege against self-incrimination during these psychiatric examinations.   The Court, citing to *Buchanan, supra,* stated that where a defendant has asserted a mental-status defense, he waives the right to raise a Fifth Amendment challenge to the prosecution's use of a psychiatric report concerning the defendant.   *Id.* at 684, 109 S.Ct. at 3149, 106 L.Ed.2d at 555–556.[4]

4.   We also note that the inferior federal courts have universally recognized that when a defendant puts her mental status at issue, her rights against self-incrimination are not violated by either an interview with or testimony from a prosecution psychiatrist.   *See, e.g., Washington v.*

A review of these three cases makes it apparent that where a defendant, such as Appellant, raises a mental-status defense, then that defendant does not have a right to raise a Fifth Amendment challenge to an examination by a Commonwealth psychiatrist. Thus, we hold that Dr. Kool's examination of Appellant did not violate her rights under the Fifth Amendment.

In the alternative, Appellant argues that even if she did not have a right to remain silent per the Fifth Amendment, she did enjoy such a right pursuant to the protections afforded her under Article I, § 9 of the Pennsylvania Constitution. She asserts that the rule announced in this court's case of *Commonwealth v. Pomponi*, 447 Pa. 154, 284 A.2d 708 (1971) is a correct statement of Pennsylvania Constitutional law.

In *Pomponi*, this court held that a defendant who had raised an insanity defense could not be compelled to answer questions put to him by a Commonwealth psychiatrist. *Pomponi*, 447 Pa. at 157, 284 A.2d at 710. Yet, *Pomponi* was clearly premised on the Fifth Amendment, and did not reference the Pennsylvania Constitution. *See Pomponi*, 447 Pa. at 162, 284 A.2d at 712. Thus, *Pomponi*, standing alone, does not mandate that we find that the protections under Article I, § 9 are broader than those afforded under the Fifth Amendment.

Appellant does present additional arguments in support of her position. In order for her position to be vindicated, we must determine that there are adequate and independent state grounds which establish that the constitution of our Commonwealth provides greater rights to our citizens than they enjoy under the federal constitution. *Commonwealth v. Edmunds*, 526 Pa. 374, 390, 586 A.2d 887, 895 (1991). Appellant, however, has failed to present a persuasive argument as to the existence of these "adequate and independent state grounds".

*Murray*, 952 F.2d 1472 (4th Cir.1991); *Silagy v. Peters*, 905 F.2d 986 (7th Cir.1990); *Hendricks v. Vasquez*, 974 F.2d 1099 (9th Cir.1992); *Isley v. Dugger*, 877 F.2d 47 (11th Cir.1989); *McNeill v. Fulcomer*, 753 F.Supp. 1294 (E.D.Pa.1990).

In arguing that her privilege against self-incrimination under Article I, § 9 is broader than that afforded under the Fifth Amendment, Appellant relies primarily on this court's decision in *D'Elia v. Pennsylvania Crime Commission,* 521 Pa. 225, 555 A.2d 864 (1989). In *D'Elia,* a witness subpoenaed by the Pennsylvania Crime Commission refused to answer questions in reliance on his Article I, § 9 privilege against self-incrimination. Our court stated that based upon the facts presented in *D'Elia,* Article I, § 9 granted a broader privilege against self-incrimination than did the Fifth Amendment.

Appellant attempts to extend the reach of *D'Elia* so that its reasoning would encompass her situation. Such an attempt, however, must fail. In sharp contrast to the issue presented in the matter *sub judice,* the issue in *D'Elia* was whether use immunity was adequate to fully protect the Article I, § 9 right of a witness before "an independent commission that [had] neither legislative, executive, nor judicial powers, whose sole purpose [was] the gathering and disseminating of information about suspected criminal activity." *D'Elia,* 521 Pa. at 231, 555 A.2d at 867. The holding, therefore, was necessarily confined to that context. The limited nature of the holding was underscored by the Concurring Opinion of Mr. Justice Papadakos, which was joined by three other Justices, which stated that *D'Elia* applied "only to situations before the Pennsylvania Crime Commission...." *D'Elia,* 521 Pa. at 242, 555 A.2d at 872.

The view that the reasoning of *D'Elia* applies only to cases involving the granting of immunity to witnesses before the Crime Commission was confirmed in this court's unanimous decision in *Commonwealth v. Swinehart,* 541 Pa. 500, 664 A.2d 957 (1995). In *Swinehart,* we explicitly stated that *D'Elia* was "to be strictly limited to its facts which involved testimony being compelled from a witness before the Crime Commission...." *Id.* at 516 n. 12, 664 A.2d at 965 n. 12. Thus, *D'Elia* does not provide support for Appellant's position.

Appellant's other argument in support of her contention that she has broader rights under the Pennsylvania Constitution than under the federal constitution is that our Common-

wealth's Constitution extends the privilege to the protection of a citizen's reputation, whereas the federal constitution does not. The Pennsylvania Constitution does indeed grant this broader protection. *See Commonwealth v. Gibbs,* 4 U.S. 253, 4 Dall. 253, 1 L.Ed. 822, 3 Yeates 429 (1802). Yet, the fact that protection of one's reputation is encompassed within the scope of our Commonwealth's constitutional privilege against self-incrimination does little to advance Appellant's argument; such a statement does not illuminate why Appellant, in her interview with Dr. Kool, enjoyed a broader privilege against self-incrimination under Pennsylvania's Constitution in her interview with Dr. Kool than she did under the federal constitution.

Recent case law, which went unmentioned by Appellant in her brief, further weakens Appellant's argument. In this court's opinion in *Swinehart,* we provided a compendium of cases and constitutional amendments concerning Article I, § 9. We concluded that in all instances other than the protection given by our Commonwealth's Constitution to reputation, the provision in Article I, § 9 against self-incrimination tracks its federal counterpart. *Swinehart,* 541 Pa. at 512–518, 664 A.2d at 962–965.

Because Appellant has not provided a persuasive argument as to why Article I, § 9 should in this instance be interpreted more broadly than the Fifth Amendment, and because at this juncture, we have been unable to formulate such a rationale, we reject this argument.

Thus, we hold that where the defendant has raised a defense based on mental infirmity, the defendant may not refuse to allow the Commonwealth psychiatrist to examine him or her on the basis that it violates the defendant's privilege against self-incrimination.[5]

5. Appellant also contends that even if it were constitutional to allow a Commonwealth psychiatrist to testify as to the examination of a defendant raising an *insanity* defense, it is inappropriate to allow a psychiatrist to testify as to the examination of a defendant raising a *diminished capacity* defense. Appellant argues that where an insanity defense is raised, there is no issue of "guilt" because the defendant concedes the act and the requisite mental state but contends that the criminality

Appellant has also claimed that her counsel was ineffective for failing to object to the court order directing Appellant to be interviewed by Dr. Kool on the basis that it violated her privilege against self-incrimination. As her underlying claim has no merit, this claim of ineffective assistance of counsel must fail. *Commonwealth v. Wilson*, 538 Pa. 485, 498, 649 A.2d 435, 442 (1994) (counsel is not required to pursue meritless claims.)

Next, Appellant asserts two separate issues. First, she asserts that the trial court erred in allowing Dr. Kool to testify as to factual statements made by Appellant concerning the

should be excused because the defendant did not understand the difference between right and wrong. Therefore, Appellant asserts, statements made by the defendant to a Commonwealth psychiatrist cannot be considered incriminating. She asserts that in a diminished capacity defense case, however, the issue of whether the defendant could form specific intent is contested and is an issue of "guilt"; therefore, statements made by a defendant to a State psychiatrist could be considered incriminating and the defendant should not be compelled to undergo the exam. Thus, she asserts, allowing Dr. Kool to examine her violated her privilege against self-incrimination.

Several courts have been presented with the argument that while it may be appropriate to compel an examination by a State psychiatrist of a defendant who raises an insanity defense, it is inappropriate where the defendant has raised a mental infirmity defense other than insanity. The courts have overwhelmingly rejected this distinction as being irrelevant in determining whether a defendant retains the privilege against self-incrimination during the psychiatric interview. *See, e.g., Arizona v. Schackart*, 175 Ariz. 494, 858 P.2d 639 (1993); *Hartless v. State*, 327 Md. 558, 611 A.2d 581 (1992); *State v. Goodwin*, 249 Mont. 1, 813 P.2d 953 (1991); *State v. Briand*, 130 N.H. 650, 547 A.2d 235 (1988); *United States v. Halbert*, 712 F.2d 388 (9th Cir.1983). *Contra State v. Vosler*, 216 Neb. 461, 345 N.W.2d 806 (1984).

We are in agreement with the majority of these courts on this issue. The rationale supporting our holding in the matter *sub judice* is that where a defendant has raised a mental disability defense, a defendant has waived his or her privilege against self-incrimination and may be compelled to submit to a psychiatric exam so that the Commonwealth can prepare its case in rebuttal. We have *not* based our holding on the notion that statements made by a defendant to a Commonwealth's psychiatrist do not violate the privilege against self-incrimination because they are somehow non-incriminating. Thus, determinations of whether one defense can truly be characterized as involving issues of "guilt" whereas another cannot, simply do not advance our analysis.

shooting.[6] Furthermore, Appellant raises a second issue that her trial counsel was ineffective for failing to object to this very same testimony.

First, as there was no objection to the testimony at trial, then the issue of trial court error has been waived. *See Commonwealth v. Robinson*, 543 Pa. 190, 196, 670 A.2d 616, 619 (1995).

Appellant's ineffectiveness claim must also fail as it has no merit. Appellant claims that Dr. Kool's testimony concerning Appellant's statements was used by the Commonwealth to bolster its case-in-chief and establish that she had the specific intent to kill rather than as rebuttal evidence. Appellant, however, has failed to substantiate this broad claim by citation to the record. Our own review of the record also does not reveal any support for her contention.

Furthermore, we note that other courts which have addressed whether a psychiatrist may testify as to specific statements made by a criminal defendant for the purpose of rebutting a defendant's mental infirmity defense have found that such testimony is proper. *See, e.g., Isley v. Dugger*, 877 F.2d 47 (11th Cir.1989) (in rebutting defendant's insanity defense, State psychiatrists were properly allowed to quote defendant's statements made to them concerning defendant's criminal conduct); *United States v. Madrid*, 673 F.2d 1114

6. Appellant focuses on the following excerpts from Dr. Kool's testimony concerning statements she made during the interview:
> And she said to [Lauritano], . . . wait a minute. I have something for you. And she went up and got the gun. . . . I asked her what she meant by I have something for you, and she replied to me, I guess the gun. . . . I asked about the pause [after placing the gun to Lauritano's head, Appellant briefly paused before firing] and she said she thought he would say something. . . .
> R. at 470a and 472a.

The scope of Dr. Kool's examination was confined to the scope of the examinations of defense experts. Appellant asserts, however, that she made some statements to Dr. Kool which she had not made to her experts. She asserts that the statements "I asked her what she meant by I have something for you, and she replied to me, I guess the gun" and that during the pause when the gun was at Lauritano's head, Appellant "thought he would say something" were not included in her statements to her psychiatrists.

(10th Cir.1982) (court held that it was not error for the State's psychiatrist, when testifying on rebuttal, to quote to the jury statements made by defendant concerning defendant's criminal conduct); *United States v. Leonard,* 609 F.2d 1163, 1166 (5th Cir.1980) (in stating that a psychiatrist for the State may testify as to a statement made by the defendant in rebutting an insanity defense, the court commented that "it may be appropriate and even in some cases necessary for the psychiatrist, when testifying on the issue of sanity, to disclose the criminal activity related to him by the defendant"). We find these cases to be persuasive and consistent with the holdings of the United States Supreme Court as discussed above.

In support of her position that a psychiatrist may not quote statements made by the defendant to the factfinder, Appellant cites to a phrase in *Buchanan, supra.* The United States Supreme Court, in reciting the circumstances in which the psychiatrist's report on the defendant was admitted into evidence, noted that the report "had not described *any* statements by [the defendant] dealing with the crimes for which he was charged." *Buchanan,* 483 U.S. at 423, 107 S.Ct. at 2918, 97 L.Ed.2d at 356. We do not share Appellant's view that this passage from *Buchanan* stands for the proposition that a psychiatrist may not quote statements made by the defendant. We have found nothing to indicate that the United States Supreme Court hinged its holding on the fact that the State's psychiatrist had not quoted statements made by Buchanan. Furthermore, there is no statement by the Court that such psychiatric testimony may not mention specific statements made by the defendant about his or her criminal activity.

Not only have we failed to locate such a requirement in *Buchanan,* but we also conclude that it would be illogical for us to graft such a holding onto that case. In *Buchanan,* the Court found that the defendant had no Fifth Amendment privilege against the introduction of psychiatric testimony by the prosecution because he had presented psychiatric evidence in his defense. We have also concluded that Appellant did not possess a privilege against self-incrimination during her interview with Dr. Kool because she had raised a diminished

capacity defense. With that premise in mind, we fail to understand how the testimony of a psychiatrist concerning specific statements by a defendant would somehow reanimate or resurrect a right that the defendant did not possess.

Thus, we conclude that where a criminal defendant has raised a mental infirmity defense, and a psychiatric expert for the Commonwealth has examined her, there is no constitutional prohibition against the expert testifying on rebuttal as to the defendant's specific statements. Because we have concluded that Appellant's underlying claim has no merit, trial counsel was not ineffective for failing to object to this testimony. *Wilson, supra.*

■ Finally, Appellant asserts that her counsel was ineffective for failing to call character witnesses on her behalf. This claim has no merit.

As noted by the trial court, Appellant conceded that she had killed Lauritano, and the only question remaining for the Commonwealth to establish was whether Appellant had the specific intent to kill. The only other issue remaining in the case was whether Appellant had established that she was incapable of forming the specific intent to kill, and thus made out her diminished capacity defense.

The trial court and the Superior Court both concluded that good character evidence [7] was irrelevant to the only questions before the court: whether Appellant had the specific intent to kill Lauritano, and whether she was incapable of forming the specific intent to kill. Thus, the lower courts concluded, since the evidence was irrelevant, counsel was not ineffective for failing to introduce it. *See Wilson, supra.* We find no fault with the lower courts' analyses on this point, and thus reject Appellant's final claim.

7. The trial court noted in its opinion that the three lay witnesses produced by appellate counsel at the evidentiary hearing were questioned concerning their views on Appellant's good character, but were never asked to express opinions or observations on Appellant's infirm mental state. Tr. ct. slip op. at 29, n. 5.

434

For the foregoing reasons, we affirm the order of the Superior Court.

NIX, C.J., did not participate in the consideration or decision of this case.