J-A06010-20

2020 PA Super 157

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| HAROLD BURTON | |
| Appellant | No. 868 EDA 2019 |

Appeal from the Judgment of Sentence entered October 30, 2018
In the Court of Common Pleas of Montgomery County
Criminal Division at No: CP-46-CR-0005776-2016

BEFORE: STABILE, J., KING, J., and STEVENS, P.J.E.[*]

OPINION BY STABILE, J.:            **FILED JULY 06, 2020**

Appellant, Harold Burton, appeals from the judgment of sentence entered on October 30, 2018 in the Court of Common Pleas of Montgomery County after a jury convicted him of drug delivery resulting in death ("DDRD") and related offenses. Appellant contends the evidence was insufficient to support his conviction of DDRD because the jury acquitted him of recklessly endangering another person ("REAP"). He further asserts the trial court erred by denying his motion to suppress cell-site location information ("CSLI"). Upon review, we affirm.

From our review of the record, including the trial court's Rule 1925(a) opinion, we glean the following:

---

[*] Former Justice specially assigned to the Superior Court.

On January 29, 2016 at 5:52 a.m., officers responded to a call for an unresponsive person at 540 East High Street in Pottstown Borough. The unresponsive person was Renee Winslow, who was deceased upon the officers' arrival. The officers found a syringe on the floor near her body. Officers also recovered three blue wax bags from the scene that were later determined to contain fentanyl. In addition, the officers recovered Ms. Winslow's cell phone and prescription pill bottles.

Between 7 p.m. and midnight on January 28, Ms. Winslow had exchanged text messages with the phone number 484-358-8938, which was stored in her phone under the name "Rachel." Appellant stipulated that the phone number was his and that he was using his phone during that window of time. As reflected in the trial court's Rule 1925(a) opinion, Ms. Winslow and Appellant exchanged the following text messages:

> At 7:31 p.m., Ms. Winslow texted [Appellant], "Are you going to be around in like 45 minutes to come to my apartment?" [Appellant] replied, "Yeah." She replied, "O. k. Thank you," followed by, "Do you want me to call you or [] you want to just meet there at like 8:20?" [Appellant] responded at 7:34 p.m., "What are you going to need?" Ms. Winslow replied, "Depends. You givin to me for 10 or 15?" And again, "[I'd] really appreciate 10. Then I'd need four." At 7:36 p.m., [Appellant] responded, "Ok." Ms. Winslow responded, "Thanks babe so I'll see you in like 45 mins." At 9:15 p.m., Ms. Winslow texted again, "Are you not coming? I mean, it[']s Thursday. Seems like you always tell me you're coming on Thursdays but never show up." At 10:20, she texted, "So what's up with that promise??" Between 10:37 p.m. and 10:47 p.m., there were three phone calls between the two. Finally, at 11:53 p.m., [Appellant] texted her "U ok?" Detective Cameron Parker testified that in his training and experience, this conversation was indicative of arranging a drug transaction.

Trial Court Opinion, 8/13/19, at 2 (citations to notes of trial testimony omitted).

Surveillance video of Ms. Winslow's apartment on the night of her death revealed that Ms. Winslow arrived home at approximately 8:26 pm. At approximately 10:39 p.m. and again at 10:47 p.m., she was seen opening her door and looking out, the second time while on the phone. Surveillance video from her apartment building showed Appellant walking near Ms. Winslow's building while talking on his phone. His phone was using the tower near her apartment. At approximately 10:47 p.m., Appellant entered Ms. Winslow's apartment and stayed less than one minute. Her boyfriend, who called for help, arrived home at approximately 5:48 a.m.

On June 22, 2016, Appellant was arrested and charged with DDRD, REAP, criminal use of a communication facility, and possession with intent to deliver a controlled substance ("PWID").[1] Appellant filed a motion to suppress the subscriber information relating to his cell phone. Initially, his request was based on claimed material misrepresentation in the application to obtain the information under the Wiretap Act. The court denied the motion. After the United States Supreme Court ruled that a search warrant was required to obtain CSLI absent exigent circumstances,[2] the Commonwealth applied for

_____

[1] 18 Pa.C.S.A. §§ 2506(a), 2705, 7512(a), and 35 P.S. § 780-113(a)(30).

[2] *Carpenter v. United States*, 138 S.Ct. 2206 (2018).

and obtained a search warrant. Appellant sought to exclude the CSLI in a supplemental motion to suppress. At the conclusion of a July 10, 2018 hearing, the court denied his motion.

Following a two-day trial, a jury found Appellant guilty of DDRD, criminal use of a communication facility, and PWID. The jury acquitted Appellant on the REAP charge. On October 31, 2018, the trial court sentenced Appellant to an aggregate term of 13 to 35 years in a state correctional institution.

Appellant filed a post-sentence motion challenging the weight of the evidence and seeking modification of his sentence. Following a hearing, the court denied the motion. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant asks us to consider two issues in this appeal:

1. Was there insufficient evidence that Appellant recklessly brought about the decedent's death as required by 18 Pa.C.S. § 2506(a) Drug Delivery Resulting in Death since the jury acquitted [Appellant] of Recklessly Endangering Another Person?

2. Did the trial court err in not granting the defense's Supplemental Motion to Suppress Cell Site Location Information?

Appellant's Brief at 1-2.

Appellant first challenges the sufficiency of evidence supporting his DDRD conviction in light of his acquittal of REAP, contending the guilty verdict for DDRD is inconsistent with his acquittal of REAP. Initially, we reiterate that

> [o]ur standard of review upon a challenge to the sufficiency of the evidence is well settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Storey*, 167 A.3d 750, 757 (Pa. Super. 2017) (quoting

*Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001)

(additional citations omitted)). Further,

it is well-settled that inconsistent verdicts are permissible in this Commonwealth. *See Commonwealth v. States*, 595 Pa. 453, 938 A.2d 1016, 1025 (2007). As we explained in *Commonwealth v. Petteway*, 847 A.2d 713 (Pa. Super. 2004):

We note first that inconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal. Consistency in verdicts in criminal cases is not necessary. When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity. Thus, this Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is

> evidence to support the verdict. The rule that inconsistent verdicts do not constitute reversible error applies even where the acquitted offense is a lesser included offense of the charge for which a defendant is found guilty.

*Commonwealth v. Barnes*, 167 A.3d 110, 120 (Pa. Super. 2017) (*en banc*) (quoting *Petteway*, 847 A.2d at 718) (citations and quotation marks omitted).

We next review the elements of the crimes at issue. With regard to DDRD,

> [a] person commits a felony of the first degree if the person intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of [35 P.S. §780-113(a)(14) or (30)], and another person dies as a result of using the substance.

18 Pa.C.S.A. § 2506(a). The crime of DDRD "consists of two principal elements: '(i) [i]ntentionally administering, dispensing, delivering, giving, prescribing, selling or distributing any controlled substance or counterfeit controlled substance and (ii) death caused by ('resulting from') the use of that drug.'" *Commonwealth v. Kakhankham*, 132 A.3d 986, 991-92 (Pa. Super. 2015). As this Court recently determined:

> [T]he applicable *mens rea* for the crime of drug delivery resulting in death is two-fold. First, the delivery, distribution or sale of the contraband must be intentional. *Kakhankham*, 132 A.3d at 992. Second, the actual death must be the reckless result of the actions of the defendant. *Id.* at 995. As such, the crime is an intentional act in providing contraband, with a reckless disregard of death from the use of the contraband.

***Commonwealth v. Carr***, 227 A.3d 11, 16-17 (Pa. Super. 2020).[3]

With respect to REAP, "[a] person commits a misdemeanor of the second

degree if he recklessly engages in conduct which places or may place another

_____

[3] As Appellant notes, the trial court did not instruct the jury as to any *mens rea* requirement for the second element of Section 2506(a). With respect to DDRD, the trial court instructed the jury in accordance with the Pa. SSJI (Crim), § 15.2506 as follows:

> First, that the defendant delivered and/or sold and it's not important, it could be delivery or sale, however it took place, but we've been using the term delivery -- a controlled substance to a person, in this case Renee Winslow. Second, that the defendant did so intentionally; that is, it was his conscious object to deliver a controlled substance to Renee Winslow. Third, that the delivery or sale was in violation of the Controlled Substances, Drug, Device and Cosmetic Act. And again, that's one of the charges here, that it is in violation of the Act. And fourth, that a person has died as a result of using the substance. So if you find each of these elements beyond a reasonable doubt, you should find the defendant guilty. If you do not find each proven beyond a reasonable doubt, then you would find the defendant not guilty.

Notes of Testimony, Trial, 7/13/18, at 221-22. The instruction as delivered did not address *mens rea* relating to recklessness for the second element of DDRD, nor does the suggested instruction include any such language. Appellant's counsel did not request any additions or corrections to the instructions. ***Id.*** at 232. Consequently, any issues relating to the instruction are waived. ***See*** Pa.R.A.P. 302(a) (issues not raised in the trial court cannot be raised for the first time on appeal). The jury requested that the charges be read a second time. The court complied and again delivered the instruction, in accordance with the suggested standard jury instructions. ***Id.*** at 247-48.

Even if Appellant had preserved an objection to the instruction, he would not be entitled to any relief. ***See Storey***, 167 A.3d at 758 (defendant not entitled to relief based on lack of "recklessness" instruction on second element of DDRD, recognizing this Court's determination that the sale of heroin "satisfies the reckless element as to the possibility of [buyer's] death." ***Kakhankham***, 132 A.3d at 995-96.).

person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. The

Crimes Code defines "recklessly" as follows:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3).[4]

Appellant contends that "REAP is a lesser included of [DDRD] because

recklessly brin[g]ing about a person's death is an element of [DDRD]."

---

[4] The court delivered the following instruction with respect to REAP, in accordance with Pa. SSJI (Crim), §15.2705:

> Second, he's charged with recklessly endangering another person. The defendant has been charged with this crime. To find the defendant guilty of this offense, you must find that the defendant recklessly did something that placed or may have placed Renee Winslow in danger of death or serious bodily injury. A person acts recklessly with respect to serious bodily injury when he consciously ignores a great and unjustified risk that what he is doing will cause another person to be seriously injured. The risk must be so serious that considering what a defendant did and what his intentions were, he acted in a way that would amount to a gross deviation from the standard of conduct that a reasonable person in his situation would have followed. If after considering all the evidence you find the Commonwealth has established beyond a reasonable doubt that the defendant's reckless action placed Renee Winslow in danger of death or serious injury, you should find the defendant guilty of recklessly endangering another person. Otherwise, you must find him not guilty.

Notes of Testimony, Trial, 7/13/18, at 222-23.

Appellant's Brief at 4 (citing **Kakhankham**).  He contends that our Supreme

Court's decision in **Commonwealth v. Magliocco**, 883 A.2d 479 (Pa. 2005),

requires that Appellant's DDRD conviction be vacated as a "legally inconsistent

verdict . . . because the acquittal of the lesser crime proves that there was

insufficient evidence to prove each element of the greater crime."  **Id.**  We

cannot agree.

Appellant relies heavily on **Magliocco** in support of his contention that

his "inconsistent verdict" cannot stand.  In **Magliocco**, the defendant was

convicted of ethnic intimidation but was acquitted on a charge of terroristic

threats, a predicate offense for an ethnic intimidation conviction.[5]  On appeal,

this Court vacated the ethnic intimidation conviction and our Supreme Court

affirmed.  **Id.** at 489-90.

In **Commonwealth v. Miller**, 35 A.3d 1206 (Pa. 2012), the Court

reinforced that **Magliocco** is limited in its application.  In **Miller**, the

defendant was charged, *inter alia*, with second-degree murder and with

---

[5] At the time relevant to the proceedings in **Magliocco**, the Crimes Code provided that a person is guilty of ethnic intimidation "if, with malicious intention toward the race . . .  of another individual or group of individuals, he **commits an offense under any other provision of this article or under Chapter 33 . . . or under section 3503 . . . or under section 5504** . . . with respect to such individual . . . or with respect to one or more members of such a group."  18 Pa.C.S.A. § 2710(a) (emphasis added).  "It is undisputed that the only potentially applicable predicate offense at issue in this case was Terroristic Threats, 18 Pa.C.S.[A.] § 2706.  The trial judge, however, acquitted Magliocco of that offense, and that acquittal formed the basis for his appellate challenge to the ethnic intimidation conviction before the Superior Court." **Magliocco**, 883 A.2d at 489 (footnotes omitted).

robbery, which was the predicate offense for the second-degree murder charge. A jury found him guilty of second-degree murder but acquitted him of robbery. He appealed to this Court, claiming the evidence was insufficient to sustain his second-degree murder conviction because the jury acquitted him of the predicate offense of robbery. We reversed, reasoning that the murder conviction could not stand because acquittal of robbery reflected the Commonwealth's failure to prove the defendant killed his victim in the course of perpetrating a robbery. The Supreme Court granted the Commonwealth's petition for allowance of appeal to consider whether "an acquittal on the felony upon which a second-degree murder charge is predicated necessitate[s] reversal of the jury's second degree murder conviction?" *Id.* at 1208. The Court noted that "[t]he question before us implicates the general issue of inconsistent verdicts, which, under longstanding federal and state law, are allowed to stand so long as the evidence is sufficient to support the conviction." *Id.* (citations omitted).

The Court held that this Court erred by extending the Supreme Court's holding in *Magliocco*, "which was grounded in the plain text of the ethnic intimidation statute[.]" *Id.* at 1212. *"Magliocco* reflects our conclusion that the Commonwealth fails to prove an element of the offense of ethnic intimidation if the factfinder acquits the accused of the predicate offense." *Id.*

Examining the elements of second-degree murder as defined in 18 Pa.C.S.A. § 2502(b), the Court ruled that a second-degree murder

conviction does not require that the predicate offense was actually completed.

The Court held:

> [I]n contrast to the crime of ethnic intimidation, second-degree murder does not require, as an element of the crime, the completion of the predicate offense. Thus, **Magliocco**, which was grounded in the delineation of the elements of ethnic intimidation set forth in the text of that statute, does not control the outcome of the instant case, where a very different statute is at issue. Accordingly, relying on the long-standing and well-established principle that consistency in a verdict is not required, we hold that [Miller's] acquittal of the predicate offense of robbery does not necessitate the vacatur of his conviction of second-degree murder. While recognizing that the jury's verdict appears to be inconsistent, we refuse to inquire into or to speculate upon the nature of the jury's deliberations or the rationale behind the jury's decision. Whether the jury's verdict was the result of mistake, compromise, lenity, or any other factor is not a question for this Court to review. We affirm that an acquittal cannot be interpreted as a specific finding in relation to some of the evidence, and that even where two verdicts are logically inconsistent, such inconsistency alone cannot be grounds for a new trial or for reversal. Furthermore, the "special weight" afforded the fact of an acquittal plays no role in the analysis of inconsistent verdicts, because, by definition, one of the verdicts will always be an acquittal. **Magliocco** and [**Commmonweatlh v. Reed**, 9 A.3d 1138 (Pa. 2010)],[6] are distinguished by the plain text of their particular governing statutes, which controlled our disposition of those cases, but are not generally applicable to other offenses.

**Id.** at 1213. **See also Petteway, supra** (no reversible error for inconsistent verdict where acquitted offense is lesser included of charge for which defendant is found guilty).

---

[6] In **Reed**, the Court considered the effect of an acquittal of an underlying offense on the grading of a conviction for attempted unlawful contact with a minor. **See Miller**, 35 A.3d at 1210-11.

Turning to the case before us, in his Rule 1925(b) statement, Appellant challenged the sufficiency of evidence relating to each of the two elements of his DDRD conviction. Concise Statement, 4/22/19, at ¶¶ 1-2. However, he has abandoned his sufficiency challenge regarding the first element, *i.e.*, the intentional delivery, sale, etc., of a controlled substance. Instead he challenges the sufficiency of evidence relating only to the second element, *i.e.*, that "another person dies as a result of using the substance," contending that his DDRD conviction cannot stand in light of his acquittal of REAP. We disagree. As the trial court explained:

> Acquittal of REAP does not negate the *mens rea* required for the second element of [DDRD]. Rather, it is nothing more than the jury's exercise of leniency. This [c]ourt submits that the sale of fentanyl alone is sufficient to establish the reckless *mens rea* required for the second element of [DDRD]. As the Court held in **Kakhankham**, the recklessness *mens rea* required for the second element of [DDRD] is satisfied by the delivery of a drug whose dangers are widely known. [**Kakhankham**, 132 A.3d at 995-96.] In the midst of today's opioid epidemic it is common knowledge that fentanyl is particularly deadly. Specifically, the toxicologist testified that fentanyl is 40-50 times more potent than heroin and 100 times more potent than morphine. Tellingly, a little more than an hour after delivering the drugs to Ms. Winslow, [Appellant] texted her, "U ok?," indicating he knew the potency of what he had given her. Thus, delivering such a substance was inherently reckless and the evidence was sufficient to support a conviction for [DDRD].

Trial Court Opinion, 8/13/19, at 20.

In **Magliocco**, the defendant's acquittal of terroristic threats required vacatur of his ethnic intimidation conviction because, under the terms of the statute, ethnic intimidation required the commission of a predicate offense.

By contrast, under the term of 18 Pa.C.S.A. § 2506(a), DDRD does not require that a predicate offense be committed.

Appellant here received inconsistent verdicts, a result acceptable under Pennsylvanian law with few, limited exceptions, such as occurred in **Magliocco**. Therefore, our inquiry is limited to whether there was sufficient evidence to sustain his conviction of DDRD.

"A challenge to the sufficiency of the evidence requires this Court to determine 'whether the evidence admitted at trial, and all the reasonable inferences derived therefrom viewed in favor of the Commonwealth as verdict winner, supports the jury's finding of all the elements of the offense beyond a reasonable doubt.'" **Commonwealth v. Peck**, 202 A.3d 739, 743 (Pa. Super. 2019), *appeal granted on other grounds*, 218 A.3d 374 (Pa. 2019) (quoting **Commonwealth v. Packer**, 168 A.3d 163 n.3 (Pa. 2017) (citation and quotation marks omitted). Again, DDRD "consists of two principal elements: (i) [i]ntentionally administering, dispensing, delivering, giving, prescribing, selling or distributing any controlled substance or counterfeit controlled substance and (ii) death caused by ('resulting from') the use of that drug." **Kakhankham**, 132 A.3d at 991-92.

Based on our review of the record, we agree with the trial court that the evidence was indeed sufficient. The evidence demonstrated that Appellant intentionally delivered a controlled substance, fentanyl, to Ms. Winslow, that fentanyl caused her death, and that her death was the reckless result of

Appellant's actions. **See Carr, supra**, 227 A.3d at 16-17 ("the crime is an intentional act in providing contraband, with a reckless disregard of death from the use of the contraband"); **See also Storey**, 167 A.3d at 758 (evidence that defendant intentionally sold heroin to victim, that heroin caused the victim's death, and that defendant's conduct in causing the victim's death was reckless, was sufficient to prove DDRD) and **Peck**, 202 A.3d at 745 (same). Appellant's first issue fails.

In his second issue, Appellant contends the trial court erred in denying his supplemental motion to suppress CSLI, *i.e.*, cell-site location information. As our Supreme Court instructed in **Commonwealth v. Jones**, 988 A.2d 649 (Pa. 2010):

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. **Commonwealth v. Bomar**, 573 Pa. 426, 826 A.2d 831, 842 (2003). Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, "whose duty it is to determine if the suppression court properly applied the law to the facts." **Commonwealth v. Mistler**, 590 Pa. 390, 912 A.2d 1265, 1269 (2006) (quoting **Commonwealth v. Nester**, 551 Pa. 157, 709 A.2d 879, 881 (1998)). Thus, the conclusions of law of the courts below are subject to our plenary review. **Mistler, supra; Commonwealth v. Morley**, 545 Pa. 420, 681 A.2d 1254, 1256 n. 2 (1996).

*Id.* at 654.

At issue here is the CSLI the Commonwealth initially obtained under the Pennsylvania Wiretap Act. 18 Pa.C.S.A. §§ 5701-5782. Appellant filed a motion to suppress, claiming material misrepresentation in the information provided in the affidavit in support. Essentially, Appellant argued that the affidavit referred to "purported heroin" whereas there was no mention of any drug by name in the text messages between Appellant and Ms. Winslow.[7] The motion was denied.

On June 22, 2018, approximately three weeks before this case proceeded to trial, the United States Supreme Court issued its decision in *Carpenter v. United States*, 138 S.Ct. 2206 (2018), holding that obtaining CSLI constituted a search requiring a search warrant. Consequently, the Commonwealth sought and obtained a search warrant to obtain the CSLI to conform to the Supreme Court's mandate in *Carpenter*, invoking the independent source doctrine.

Quoting *Commonwealth v. Henderson*, 47 A.3d 797 (Pa. 2012), the trial court explained:

> Under [the independent source doctrine], evidence tainted by illegal police conduct (such as an unlawful seizure) nevertheless may be admitted into evidence if the evidence can be fairly regarded as having an origin independent of the unlawful conduct. Pursuant to the doctrine as it subsequently evolved in

---

[7] Testing revealed that the drug delivered and/or sold to Ms. Winslow by Appellant was actually fentanyl rather than heroin.

> ***Commonwealth v. Melendez***, 544 Pa. 323, 676 A.2d 226
> (1995), the independent source is to be "*truly independent from
> both the tainted evidence and the police or investigative team
> which engaged in the misconduct by which the tainted evidence
> was discovered.*" ***Id.*** at 334, 676 A.2d at 231[.]

Trial Court Opinion, 8/13/19, at 8-9 (quoting ***Henderson***, 47 A.3d at 798-99

(additional citation omitted) (emphasis in original)).

In ***Henderson***, there were concerns relating to the probable cause

supporting a warrant obtained by a member of the police sexual assault unit

in a rape-kidnapping case. As a result, the prosecution sought to secure a

second warrant, invoking the independent source rule. Another member of

the same police sexual assault unit was tasked with undertaking a probable

cause investigation to support a second search warrant. The detective's

investigation included speaking with the detective who secured the original

warrant as well as, *inter alia*, a review of the case file and the victim's medical

records. The detective then applied for and secured a second warrant that

was used to secure an additional blood sample from the defendant.

The Supreme Court ruled that suppression of evidence obtained with the

second warrant was not required, explaining that the Court was "unwilling to

enforce a 'true independence' rule in absence of police misconduct and on pain

of the Commonwealth being forever barred from obtaining non-evanescent

evidence connecting [the defendant] with his crimes." ***Henderson***, 47 A.3d

at 804. The Court limited "the independent police team requirement to

situations in which the rule prevents police from exploiting the fruits of their own willful misconduct." *Id.* at 805.

At the July 10, 2018 hearing on Appellant's supplemental suppression motion, Detective James Lavin testified that he was contacted by the DA's office and was asked to obtain a search warrant for Appellant's cell phone records. Detective Lavin reviewed various records and a surveillance video from Ms. Winslow's apartment but did not review the call detail records obtained under the Wiretap Act. He did review the affidavit supporting the application under the Wiretap Act but did not speak with the affiant officer. He did acknowledge having spoken with that officer in passing in 2016. "No information obtained from the call detailed records, as obtained pursuant to the Wiretap Act, was included in the subsequent affidavit of probable cause prepared by Det. Lavin." Trial Court Opinion, 8/13/19, at 9.

At the conclusion of the hearing, the court denied the suppression motion, finding Detective Lavin was an independent source based on the testimony presented at the hearing and a review of exhibits. The court noted the unusual circumstances, particularly the timing of the Supreme Court's *Carpenter* decision. That decision necessitated that the Commonwealth establish the existence of an independent source to support issuance of a warrant so it could obtain information it had previously properly obtained under the Wiretap Act. *Id.* at 10-11 (citing Notes of Testimony, Suppression

Hearing, 7/10/18, at 83-86).[8] In addition, the court "denied, again," Appellant's claim of a material misstatement in the initial warrant application. *Id.* at 12.

We conclude that the suppression court's findings of fact are supported by the record and that its legal conclusions drawn from those facts are correct. The warrant was required in the instant case, not because of any police misconduct, but rather because *Carpenter* announced a requirement for a search warrant to obtain cell phone information that was previously obtainable under the Wiretap Act. Therefore, we shall not disturb the court's denial of either Appellant's original or supplemental motion to suppress. Appellant's second issue does not afford him relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/6/20

---

[8] We note that this Court, on January 24, 2020, held that court orders used to obtain real-time CSLI constituted warrants issued in compliance with the Fourth Amendment. *Commonwealth v. Pacheco*, --- A.3d ---, 2020 PA Super 14 (filed 1/24/20). A petition for allowance of appeal is pending at 79 MAL 2020 (filed 2/24/20).