615 A.2d 452

**COMMONWEALTH of Pennsylvania**

v.

**Randy L. HILFIGER, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 3, 1992.

Filed Oct. 29, 1992.

James D. Casale, Williamsport, for appellant.

Robert W. Ferrell, Asst. Dist. Atty., Williamsport, for Com., appellee.

Before ROWLEY, President Judge, and FORD ELLIOTT and BROSKY, JJ.

FORD ELLIOTT, Judge:

This is an appeal from a judgment of sentence imposed August 27, 1991, following appellant's conviction for a summary "hit and run" vehicular offense.[1]  On appeal, appellant raises two issues: 1) that the applicable statute of limitations had expired and prosecution was thus time barred, and 2) that the evidence was insufficient to support the verdict.  For the reasons which follow, we find appellant's arguments unconvincing and shall, therefore, affirm the judgment of sentence.

On the morning of August 28, 1990, complainant Kim A. Kane was driving her car to work on Route 15 in Lycoming County.  Soon after entering upon Route 15, complainant noticed a worn and rusted, yellow Toyota pick-up truck following closely to the rear of her vehicle.  Complainant testified that the truck then attempted to pass her automobile.  She averred that the truck struck her left rear and side bumper and that she was partially run off the road.  The truck did not stop, but continued driving on.  Complainant witnessed the license plate number and gave pursuit until the vehicles reached a point where the truck's driver arrived at his apparent destination.  At this time complainant got a brief glimpse of the driver's hair color as well as the side of his face but was unable to see his full countenance because the driver averted

---

1.  75 Pa.C.S.A. § 3743.  "Hit and run" is a colloquial description of the violation.  Technically, a violator must not leave the scene of an accident involving an attended vehicle, without giving information and rendering aid as per § 3744, and in which damage to a vehicle or other property occurred.

his gaze when he saw complainant. Complainant described the driver as hatless and wearing sunglasses.

Complainant did not approach the truck's driver at that time but instead continued on to work where she telephoned state police. An initial check of the license number reported, ML01982, was fruitless. However, when so informed, complainant allowed that she could have been mistaken as to the "M" and that the first letter could have been a "W." When the police then checked WL01982, it revealed a truck owned by Spook Hollow Auto Wreckers. Thus, the state police were aware of the truck's owner, but not operator, on or about August 28, 1990.

The police conducted no further investigation until on or about October 1, 1990, when a state trooper observed the reported vehicle and followed it back to Spook Hollow Auto Wreckers. Upon the police officer's questioning, appellant admitted that he usually drove the truck in question but denied driving it the day of the accident and specifically denied being involved in an accident. A citation against appellant was issued the following day, October 2, 1990.

At trial, complainant positively identified appellant. Her identification was based not only upon the viewing of appellant on the date of the accident but also upon the fact that complainant and appellant had seen each other several times thereafter in their respective vehicles; both parties said that they frequently travelled Route 15. Complainant testified that on most of those occasions, appellant recognized her and "gave her the finger." [2]

The presentation of appellant's case included testimony by himself, his employer, and a co-worker. Appellant denied his involvement in any accident with complainant. He stated that he works from 8:00 a.m. until 5:00 p.m. and that he distinctly remembered being at work by 7:30 a.m. on the day in question. The accident occurred at approximately 8:10 a.m. His employer and co-worker served to corroborate his story. They did admit that the yellow pick-up truck was sometimes

2. A widely recognized gesture of hostile contempt.

driven on job-related chores during the work day. The employer could not remember whether appellant drove the truck on that day. The co-worker specifically remembered that he and appellant were running an errand in a different vehicle at the time of the accident. They also testified that appellant "always" wore a hat and almost never wore sunglasses.

■ Appellant's first argument on appeal is that the statute of limitations on summary vehicular offenses had already expired when the citation was issued. The statute of limitations reads, in pertinent part:

§ 5553. **Summary offenses involving vehicles**

(a) **General rule.**—Except as provided in subsection (b) or (c), proceedings for summary offenses under Title 75 (relating to vehicles) must be commenced within 30 days after the commission of the alleged offense or within 30 days after the discovery of the commission of the offense or the identity of the offender, whichever is later, and not thereafter.

(e) **Disposition of proceedings within two years.**—No proceedings shall be held or action taken pursuant to a summary offense under Title 75 subsequent to two years after the commission of the offense.

42 Pa.C.S.A. § 5553(a) and (e).[3] Essentially, appellant's argument is that the police possessed sufficient information on August 28, 1990, to have been able to discover the identity of the operator and should be charged with that knowledge. Thus, the statute of limitations should have begun to run from that date and, therefore, would have expired by the time the citation was issued on October 2, 1990. This is an extrapolation from a ruling of this court in *Commonwealth v. Matthews,*

---

**3.** Subsection (a) is somewhat poorly drafted. The initial clause describes three optional happenstances which cause the statute to begin to run. Unfortunately, the modifying clause, "whichever is later," is comparative in form. With three or more options, the superlative form, "whichever is latest," should more properly have been employed. The use of the comparative is confusing because it implies a choice between two options rather than among three. Nevertheless, we have previously considered this section to present three happenstances from which the limitation period could begin to run rather than two. *See Commonwealth v. Larson,* 299 Pa.Super. 252, 445 A.2d 550 (1982).

286 Pa.Super. 474, 429 A.2d 37 (1981), and cited by appellant. However, we believe that appellant's suggested extension of that holding is unjustified.

In *Matthews*, on January 9, 1979, two cars side-swiped each other while driving on an icy road. The defendant's automobile continued to travel for about half of a mile before it skidded off the road into a snow embankment. Before police arrived, the defendant and all of her passengers were transported to a local hospital. First, the investigating state trooper found the defendant's driver's license and registration in the disabled vehicle. Second, the defendant's brother-in-law returned to the scene in order to assist police. Finally, the defendant's husband went to the police headquarters to retrieve the defendant's purse and was interviewed by the police. The defendant was served with her summons on February 1, 1979, well beyond the 15–day limitations period in effect at that time. In *Matthews*, this court ruled that on January 9, the police were in possession of sufficient evidence from which the identity of the violator could be ascertained and that they were chargeable with knowledge of the defendant's identity. Thus, the 15–day limit began to run from that date.

Instantly, we cannot say that the police had evidence on August 28, 1990, of the identity of appellant to a degree sufficient to trigger the running of the limitations period. All that the police had on that date was knowledge of a violation, a rough description of the violator, and knowledge of the ownership of the vehicle that was used in the violation. Even had the truck been registered to an individual rather than to a company, we could not say that knowledge of the owner is the same as knowledge of the operator. Moreover, if appellant is asking this court to impose some sort of due diligence requirement on the Commonwealth pertaining to the conduct of police investigations of summary vehicular offenses, we will not do so. It is clear from subsection (e) of 42 Pa.C.S.A. § 5553, which bars all prosecutions dating more than two years from the violation date, that the legislature has anticipated the potential of lengthy police investigations and has allowed the

Commonwealth two years to conclude such investigations, identify and prosecute the violator. Furthermore, this court has previously interpreted this section to require not only that prosecution be commenced within two years, but *completed* within this time frame. *See Commonwealth v. Quinn,* 405 Pa.Super. 487, 592 A.2d 1316 (1991), *allocatur denied,* 529 Pa. 619, 600 A.2d 535 (1991), and *Commonwealth v. Markley,* 375 Pa.Super. 231, 544 A.2d 72 (1988).[4]

Appellant's second argument challenges the evidence as being insufficient to support the verdict. We note our standard of review:

> [W]hether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt.... The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence ... Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered ... Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence. (Citations omitted)

*Commonwealth v. Griscavage,* 512 Pa. 540, 542, 517 A.2d 1256, 1257 (1986) (citations omitted in original), *quoting Commonwealth v. Harper,* 485 Pa. 572, 576–77, 403 A.2d 536, 538–39 (1979).

The argument contained in appellant's brief merely points to the places in the trial transcript where his own and his witnesses' testimony either contradicts complainant's testimony or demonstrates that appellant could not have been the person involved in the accident, and that such evidence should have served to raise a reasonable doubt. What appellant

**4.** *Markley* has been partially overruled by *Quinn. Quinn* held that the statute of limitations described at 42 Pa.C.S.A. § 5553(e) is tolled where prosecution cannot be completed because of delay directly attributable to the accused.

ignores is that the trier of fact is free to disbelieve this testimony in full. The trier of fact may simply have chosen to believe the account given by the complainant. This is precisely what the trial court, as trier of fact, apparently did, as witnessed by its opinion of June 11, 1991, rejecting appellant's argument for reconsideration based on a sufficiency of evidence ground. We likewise agree that the complainant's testimony sufficiently established the elements of the crime of which appellant was convicted. Complainant testified that an accident occurred in which her vehicle was struck (Notes of testimony, 3/20/91, page 5). She testified that her vehicle was being driven or otherwise attended at the time of the accident (Notes of testimony, 3/20/91, pages 4–5). She testified that her car was damaged as a result (Notes of testimony, 3/20/91, page 7). She positively identified appellant as the operator of the other vehicle (Notes of testimony, 3/20/91, pages 7–8). Finally, complainant testified that at no time did appellant stop and identify himself or offer assistance (Notes of testimony, 3/20/91, page 6). Thus, a *prima facie* case under 75 Pa.C.S.A. § 3743 was made out by the Commonwealth. We find that appellant's second argument affords him no relief.

Accordingly, the judgment of sentence August 27, 1991, is hereby affirmed. Jurisdiction relinquished.

BROSKY, J., files a dissenting opinion.

BROSKY, Judge, dissenting.

I dissent.

The statute of limitations for summary offenses under the motor vehicle code are set forth at 42 Pa.C.S. § 5553. This section states in relevant part:

(a) General Rule.—Except as provided in subsection (b) or (c), proceedings for summary offenses under Title 75 (relating to vehicles) must be commenced within 30 days after the commission of the alleged offense or within 30 days after the discovery of the commission of the offense or the identity of the offender, whichever is later, and not thereafter.

In the present case the citation was not filed until more than 30 days after the commission of the offense. In fact, the trial court found that the citation was filed four days after the "30 day window" had closed. However, the trial court found that the statute of limitations had not been compromised since the citation was filed within thirty days of the discovery that appellant had been driving the vehicle in question.

Obviously the present case hinges upon a question of statutory interpretation, and once again we are reminded that no matter how simply worded a statute may appear at first glance or how carefully worded during drafting, real life scenarios will present themselves that create true dilemmas of judicial interpretation. In the present case one such troubling point is presented with the phrase "whichever is later" appearing in the last sentence of subsection (a). From a literal reading this phrase pairs two possibilities together with the later one acting as the trigger date. But does the phrase refer to the discovery of the commission of the offense as opposed to the discovery of the identity of the offender, the two most immediately preceding possibilities, or does this phrase refer to the commission of the offense as opposed to the discovery of either the commission of the offense or the identity of the offender? The phrase "whichever is later" is logically tied to the disjunctive "or." Yet it is not immediately apparent to which "or" it was meant to be tied.

In either case, the section has clearly superfluous language, and, thus, violates at least one premise of statutory construction, that the legislature is deemed not to use unnecessary or superfluous language. There is superfluous language because clearly it is impossible to discover either the commission of the offense or the identity of the offender prior to the actual commission of the offense. Thus, there is no need to tie the limitations period to the actual commission of the offense at all if validity is to be given to the discovery phrase. The majority admits the statute is poorly worded and notes that this section has been construed to allow the running of the period on any of the three happenings. This merely shows that judicial

interpretation is necessary to effectuate its purpose as its own wording clearly will not.

There are few cases that deal with the statute in question. However, at least one of those suggests that the statute may have been running prior to an actual determination of who was driving the vehicle at the time in question. It is this case that appellant relies principally upon. In *Commonwealth v. Matthews*, 286 Pa.Super. 474, 429 A.2d 37 (1981), we considered a case where a woman was ultimately charged with the identical offense in question here. There, in snowy conditions, two vehicles "side swiped" one another. The appellant's vehicle continued on for approximately six tenths of a mile at which time it skidded into a snow bank. All of the occupants of the vehicle were taken to a local hospital prior to the arrival of a state policeman. The investigating trooper discovered appellant's driver's license and registration in the vehicle. At the same time appellant and her husband requested that appellant's brother-in-law go to the scene of the accident to assist the police; and later that night, appellant's husband retrieved appellant's purse from the police barracks and while there answered certain questions. Appellant was ultimately charged with failure to stop, however, the citation was filed some three weeks after the accident. At the time of that accident the statute provided only fifteen days for the filing of citations. Nevertheless, appellant was convicted over protestations that the charges were untimely filed. We reversed on appeal.

In consideration of the limitations question we commented that the Commonwealth had not asserted that it had ascertained appellant's identity as the driver only fifteen days prior to the filing of the citation. We then suggested that even if that were the case it would be immaterial to the extent the Commonwealth could have discovered the appellant's identity as the driver prior to that point. We stated: "the trooper was provided with sufficient evidence from the driver's license, vehicle registration, and interview with appellant's husband to have initiated timely proceedings." 286 Pa.Super. at 478, 429 A.2d at 39. This commentary is interesting because to give

the statute the same literal reading the trial court gave it here, where the statute *would not start* until after the discovery of the commission of the offense or the discovery of the identity of the offender, whichever is later, would mean that the statutory period would not have *begun* to run until the discovery of the identity of the driver. Yet the panel comments that there was sufficient information from which "timely proceedings" could have been initiated, suggesting a belief that the period was properly measured from the date of the commission of the offense with a possible excuse of time if the identity of the offender was undiscoverable. From a logical standpoint, the panel's commentary suggests that they had construed the statute to mean that discovery of the first of either the commission of the offense or the identity of the offender would be sufficient to start the statute running or that they believed the period will begin to run if the identity of the offender is discoverable with the exercise of due diligence, notwithstanding actual discovery. Either approach would lead us to find that the present action is time barred. However, the majority chooses not to follow the lead offered in *Matthews* while, in my opinion, failing to distinguish that precedent from the present case.

The majority simply cites to the fact that in *Matthews* the panel stated that the police had sufficient information from which the identity of the violator could be ascertained while opining that in the present case the police did not. I fail to see a significant difference in the knowledge possessed in the present case as opposed to the *Matthews* case. In *Matthews* the police knew which vehicle was involved in the violation and who the vehicle was registered to. They also found the defendant's purse and driver's license in the car. However, although that may have been evidence that the defendant was in the vehicle at the time in question, it could not be considered conclusive evidence of who was operating it at that time. Still the panel found that this information created a sufficient basis from which the identity of the operator could be determined. In the present case the police discovered within one day of the offense the owner of the vehicle in question and

while not knowing who the operator was, they possessed at least a description of that person. Indeed, in *Matthews* the police did not even have a description of the offender. Yet they were deemed armed with sufficient knowledge from which that could be discovered. I believe the same is true in the present case.

The majority further refuses to impose a due diligence standard upon the Commonwealth with respect to discovering the identity of an offender although it would seem quite arguable that *Matthews* has already done so. My concern with not construing a due diligence standard within the statute is that by failing to do so we turn what appears to be a finite period of thirty days into an indefinite period hinging upon an unpredictable event, the discovering of the identity of the offender. Not only is this an unpredictable event, it is capable of control by the law enforcement authorities. That is, the period could be prolonged due to no other factor than a lack of diligent investigation. It seems completely inconsistent with the concept of a statute of limitations that the period be capable of control by those meant to be constrained by it. It seems further inconsistent with the premise that statutes of limitation are to be *liberally* construed in *favor* of the defendant and *against* the Commonwealth. *Commonwealth v. Goldhammer,* 507 Pa. 236, 489 A.2d 1307 (1985), reversed on other grounds, *Pennsylvania v. Goldhammer,* 474 U.S. 28, 106 S.Ct. 353, 88 L.Ed.2d 183 (1985). It hardly appears to be a liberal construction in favor of the defendant to have a rule that conceivably allows a limitation period to last indefinitely under a certain set of circumstances. The present case illustrates this point quite aptly.

In the present case, although the commission of the offense was discovered contemporaneously with its commission, the identity of the offender remained unknown. Trooper Garhart got the only significant lead to determining the identity of the offender on the day of, or within a day or two of, the commission of the offense. At that time Trooper Garhart had the address of Spook Hollow Auto Wreckers. To the extent the auto was not owned by an individual, it would seem logical

that it would require either a phone call or visit to Spook Hollow to determine who had been driving the vehicle at the time in question. However, after Trooper Garhart received notice that the vehicle believed to be involved in the incident was owned by Spook Hollow, he took no further steps to ascertain the identity of the driver.[1] Quite fortuitously, Trooper Garhart happened across a vehicle fitting the description given him by Ms. Kane at which time Trooper Garhart decided to investigate. However, there is no indication that absent the chance encounter with appellant Trooper Garhart would have made any significant effort to determine who was driving the vehicle. After all, no further action had been taken for some thirty days. It is entirely possible that had Trooper Garhart not observed appellant at the time he did he may have happened across appellant at some future point in time. However, to allow the limitations period to begin to run at whatever point that may be seemingly runs contrary to the element of certainty that a statute of limitations is supposed to provide. Furthermore, what if Trooper Garhart had a more pressing matter to attend at the time he observed appellant and was unable to stop appellant at that time? Would the statute await the next time Trooper Garhart happened across appellant? The potential problems with such an application are endless.

The majority suggests that the period will not be left indefinite because of the operation of 42 Pa.C.S. § 5553. The majority states "[i]t is clear from subsection (e) of 42 Pa. C.S.A. § 5553, which bars all prosecutions dating more than two years from the violation date, that the legislature has anticipated the potential of lengthy police investigations and has allowed the Commonwealth two years to conclude such

1. The following exchange between defense counsel and Trooper Garhart on cross examination:
Q. On that day, until you saw that vehicle on Route 220, had you gone to Spook Hollow to investigate that vehicle?
A. No.
Q. You knew who the owner was, Spook Hollow?
A. Um-hum.
Q. You did nothing until you saw the vehicle on October first?
A. That's correct.

investigations, identify and prosecute the violator." Majority Op. at pp. 455, 456. This is clearly a misapplication or misinterpretation of the purpose of 42 Pa.C.S. § 5553(e). This subsection acts as a form of general bar to action after two years from the date the offense was committed. As construed in *Commonwealth v. Markley*, 375 Pa.Super. 231, 544 A.2d 72 (1988), the entire disposition of the case must be completed within two years of the commission of the offense, including the disposition of post-trial motions if appealed to Common Pleas and imposition of sentence. Failure to do so will result in the dismissal of the case. This subsection clearly cannot be used to extend the investigation for two years as that would make disposition of the entire case impossible. Instead this period acts similar to Rule 1100, but with expanded application, where the citation must be filed, a hearing had and disposition of any appeal to Common Pleas including post-trial motions, should it be necessary, and the imposition of sentence, all within two years. It further makes little sense to have a thirty day statute laid out in § 5553(b) only to have an overriding two year statute laid out in subsection (e). We should not assume that our legislature is that inept at drafting statutes of limitation.

It should be remembered that a statute of limitations represents a balancing of the interests of the people of the Commonwealth and that of an accused. The majority's interpretation gives very little regard to the interests and rights of the accused by multiplying the supposedly clear mandate of 30 days some twenty four times to two years. The majority does this even though the need to do so is somewhat dubious. Even if the due diligence interpretation suggested in *Matthews*, and endorsed by myself, is followed, the period would be extended when it was not possible, in the exercise of due diligence, to determine the identity of the offender. This extension could last, presumably, as long as the practical constraints of the two year limitation would allow. The interpretation suggested in *Matthews* and argued for here simply requires that the identity be discovered, when discoverable, and the citation filed, within the thirty day period set forth in

the statute. If, as argued by the majority, the police have more pressing matters to investigate the argument should be made to the legislature to extend the period set forth in the statute.[2] Furthermore, it is generally recognized that the time allowed to commence a criminal case is proportionate to the perceived severity of the offense. By effectively extending the limitations period to two years the majority has, in essence, equated leaving the scene of a motor vehicle accident to a multitude of other felony and misdemeanor offenses. With the exception of murder and manslaughter, involuntary deviate sexual intercourse, arson, burglary, robbery, forgery and perjury, the prevailing time limit for commencing prosecution is two years. See, 42 Pa.C.S. §§ 5551 & 5552. There is simply little reason to treat leaving the scene of an accident the same as the many felony charges that currently are governed by the two year statute.

For the above reasons, I dissent.

2. Notably, the period was doubled from its earlier time requirement of fifteen days. Arguably, this extension was made for the very reason that it presented an unreasonable amount of time for police officers to investigate in light of their customary workloads.