**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**David Jason LONG, Appellant.**

Superior Court of Pennsylvania.

Submitted May 19, 2003.

Filed Aug. 26, 2003.

Martha E. Bailor, Uniontown, for appellant.

Nancy D. Vernon, Asst. Dist. Atty., Uniontown, for Com., appellee.

Before: DEL SOLE, P.J., GRACI, and BECK, JJ.

OPINION BY GRACI, J.:

¶ 1 Appellant, David Jason Long ("Long"), appeals from the May 21, 2002, Judgment of Sentence entered in the Court of Common Pleas of Fayette County. For the following reasons, we affirm the judgment of sentence.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2 The trial court summarized the facts and procedural history as follows:

On April 22, 2001, the [Appellant] David Jason Long and his friend, Daniel Bogol, had been drinking beer, playing a guitar and listening to music, from approximately 2:00 p.m. until after midnight. At approximately 12:30 a.m., on April 23, 2001, [Long] and Mr. Bogol went to Hiller for gas and cigarettes. On their way back to [Long]'s apartment in the village of Ralph, [Long] was driving his vehicle eastwardly on State Route 166 on a straight stretch of roadway in an unpopulated area near a business known locally as Croftcheck's Welding Shop. [Long] testified that he left his low beams on, even though there was no opposing traffic. While traveling, Mr. Long was conversing with his passenger, and would take his eyes off the road to look at Mr. Bogol for a couple of seconds at a time.

Mr. Long noticed a black object in the roadway, but he saw it too late to avoid hitting it. Both Mr. Bogol and Mr. Long testified that they thought it was a garbage bag. Upon arriving at his apartment, Mr. Long became aware that the damage to his vehicle was not consistent with just striking a garbage bag. He returned to the scene of the accident with a flashlight and saw a human hand protruding onto the berm from the vegetation at the edge of the road. He·next

went to a nearby service station where he called 911 and reported that an injured victim of an automobile accident was located on Route 166 near Croftcheck's. When asked for his name and address, he gave a false name and a false address from the state of Ohio.

He subsequently learned that the victim had died, and four days later he left his job on the river and turned himself into authorities. [H]e and Mr. Bogol both agree that they had no discussions [after the accident and before the preliminary hearing in this case].

[Mr. Long] was charged with careless driving, safe speed (assured clear distance), homicide by vehicle and "hit and run." [1]

At trial the jury acquitted [Long] of all charges except for the hit and run charge. On that charge the defendant was sentenced to a term of incarceration of [fifteen to thirty] months, followed by a consecutive period of probation of [thirty] months with boot camp eligibility....

Opinion, at 1 and 2.

¶ 3 Long raises three issues on appeal:

1. Whether Appellant David Jason Long substantially complied with the requirements of 75 Pa.C.S.A. [§ ] 3742 and is therefore entitled to judgment of acquittal?

. . .

2. Whether 75 Pa.C.S.A [§§ ] 3742 and 3744 are violative of Appellant's right against self-incrimination guaranteed under both [t]he Federal and State Constitutions?

. . .

3. Whether the Trial Court erred in using an element of the offense to justify sentencing [Long] in the aggravated range, where the elements of the offense are included in the offense gravity score?

. . .

Appellant's Brief, at 6.

## II. DISCUSSION

### A. Sufficiency of the Evidence

¶ 4 Long's claim that he substantially complied with sections 3742 and 3744 of Pennsylvania's "Hit–and–Run" statute, 75 Pa.C.S.A §§ 3741–3755 ("the Act"), is a challenge to the sufficiency of the evidence. Our standard of review for sufficiency challenges is well settled. We must:

[V]iew[ ] the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, [we must determine if] there is sufficient evidence to find every element of the crime beyond a reasonable doubt.... The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence ... Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered ... Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hilfiger*, 419 Pa.Super. 450, 615 A.2d 452, 456 (1992) (Citations omitted).

¶ 5 The Act imposes certain duties upon drivers involved in accidents involving

---

1. 75 Pa.C.S.A. § 3742.

death or personal injury, including rendering aid to victims and providing identification information. It provides, in pertinent part:

   **(a) General rule.**—The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid). Every stop shall be made without obstructing traffic more than is necessary.

75 Pa.C.S.A. § 3742(a). Section 3744, in turn, relating to a driver's duty to give information and render aid provides:

   **(a) General rule.**—The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle or other property which is driven or attended by any person shall give his name, address and the registration number of the vehicle he is driving, and shall upon request exhibit his driver's license and information relating to financial responsibility to any person injured in the accident or to the driver or occupant of or person attending any vehicle or other property damaged in the accident and shall give the information and upon request exhibit the license and information relating to financial responsibility to any police officer at the scene of the accident or who is investigating the accident and shall render to any person injured in the accident reasonable assistance, including the making of arrangements for the carrying of the injured person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that treatment is

necessary or if requested by the injured person.

   **(b) Report of accident to police.**—In the event that none of the persons specified are in condition to receive the information to which they otherwise would be entitled under subsection (a) and no police officer is present, the driver of any vehicle involved in the accident after fulfilling all other requirements of section 3742 (relating to accidents involving death or personal injury) and subsection (a), in so far as possible on his part to be performed, shall forthwith report the accident to the nearest office of a duly authorized police department and submit to the police department the information specified in subsection (a).

75 Pa.C.S.A. § 3744(a) and (b).

¶ 6 This Court, as well as other courts in this Commonwealth, have applied the doctrine of "substantial compliance" when determining whether drivers have fulfilled the requirements of the Act. *See Commonwealth v. Latshaw*, 382 Pa.Super. 575, 555 A.2d 1350 (1989) (substantial compliance found when driver left accident scene after other party refused to accept identification information); *Commonwealth v. Gosnell*, 327 Pa.Super. 465, 476 A.2d 46, 47 (1984) (substantial compliance found when appellant stopped and aided victim and provided name and address, but failed to reveal that it was he who hit the victim, until six or seven hours after the accident); *Commonwealth Dept. of Transp. v. Stamoolis*, 6 Pa.Cmwlth. 617, 297 A.2d 532 (1972) (substantial compliance found when appellant drove one and one-half miles down the road after the accident occurred to find a suitable place to park, and then returned to the accident scene).

¶ 7 Long argues that he, like the appellant in *Gosnell, supra*, substantially complied with the Act's requirements. We disagree. In *Gosnell,*

Appellant struck what he believed to be a large pothole. He had proceeded about two or three blocks before returning to investigate. At the scene, Appellant found the victim, severely injured, lying in the road. He pulled the victim closer to the roadside and then ran to a nearby phone and anonymously summoned the police. When the police arrived, the Appellant, giving them his name, address and phone number, told the police that he had seen nothing and was the first to arrive at the scene.... Six or seven hours after the Appellant had returned home he went to the police and told them it was most likely he who hit the victim, although evidence was presented at trial that one or two other vehicles may have run over the victim.

*Id.* at 47.

¶ 8 In finding substantial compliance by the appellant in *Gosnell,* this Court observed that when determining whether a driver has complied with the Act, a court must first consider that the purpose of the Act is to prevent drivers from leaving the scene and avoiding their responsibilities. Next, this Court cautioned that courts should avoid reaching an absurd result by applying the law too strictly. *Id.* Because Gosnell stayed at the scene to aid the victim and provided police with his correct name and address, this Court found that Gosnell was in substantial compliance with the Act, and that the seven hour delay between the time of the accident and Gosnell's report to the police that it was most likely he who hit the victim, was "no incidence of Appellant's trying to evade his responsibilities—only that of trying to realize his responsibilities." *Id.* at 48.

¶ 9 Like our Court in *Gosnell,* we agree that Long was in substantial compliance with that portion of the statute requiring drivers to render aid to accident victims. Long returned to the scene of the accident upon discovering that the damage to his car was inconsistent with just striking a garbage bag, and upon finding the victim, summoned assistance. However, unlike the appellant in *Gosnell,* Long did not provide police with correct identification, but instead gave a false name and address and did not come forward with either correct identification or to assume responsibility for hitting the victim until four days later, after he learned that the victim had died. Although we agree that, "it is a better policy to promote cooperative behavior than to convict on technical violations of a law[,]" *id.,* we find that Long's four-day delay in providing identification was an evasion rather than a realization of responsibility, and in violation of the intent of the Act.

¶ 10 Thus, after reviewing the entire record and viewing the evidence in the light most favorable to the Commonwealth as verdict winner, and drawing all reasonable inferences in the Commonwealth's favor, we find that there is sufficient evidence to prove, beyond a reasonable doubt, every element of Long's violation of sections 3742 and 3744 of the Act.

## B. Constitutionality of Pennsylvania Hit–and–Run Statute

■ ¶ 11 Next, Long claims that sections 3742 and 3744 of the Act are unconstitutional because they violate his right against self-incrimination under Article 1 § 9 of the Pennsylvania Constitution, and under the Fifth Amendment of the U.S. Constitution[2]. Long claims that the statu-

2. This Court notes that there are no major differences between the Fifth Amendment to the U.S. Constitution and Article 1 Section 9 of the Pennsylvania Constitution.

In reviewing the textual differences between Article 1, Section 9, and the Fifth Amendment to the United States Constitution, this Court concluded that neither text

tory requirement that he reveal his name, address, and insurance information constitutes self-incrimination. He argues that his privilege against self-incrimination prohibits the type of mandatory reporting required under sections 3742 and 3744 of the Act. Appellant's Brief at 21.

■ ¶ 12 The privilege against self-incrimination generally protects an individual from being compelled to incriminate himself in any manner. *Commonwealth v. Burkett*, 211 Pa.Super. 299, 235 A.2d 161 (1967). Additionally, prosecution need not be imminent to assert this privilege. *Estate of Baehr*, 408 Pa.Super. 172, 596 A.2d 803 (1991).

■ ¶ 13 Our standard of review for constitutional challenges to the validity of a statute is well settled:

A statute will be found unconstitutional only if it clearly, palpably and plainly violates constitutional rights. Under well-settled principles of law, there is a strong presumption that legislative enactments do not violate the constitution. Further, there is a heavy burden of

persuasion upon one who questions the constitutionality of an Act.

*Commonwealth v. McMullen*, 756 A.2d 58, 61 (Pa.Super.2000) (citation omitted).

¶ 14 The constitutionality of the Pennsylvania hit-and-run Act in the context of the privilege against self-incrimination has not been addressed in the Commonwealth for over sixty-five years. The only court to provide any guidance on this issue was the Court of Quarter Session for Adams County. That court upheld the constitutionality of an earlier version of the Act in the face of a self-incrimination challenge. In *Commonwealth v. Showers*, 32 Pa. D. & C. 264 (1938), the trial court addressed the constitutionality of 75 P.S. § 1025 (1937, June 29 P.L. 2329 § 3), the predecessor of the current statute. That court rejected a self-incrimination claim and upheld the statute's constitutionality, "on the theory that the information required is not incriminating in any way and is the same information obtainable from the license plate attached to the automobile." The language of the current Act is similar to the language previously found in section 1025.[3]

---

indicated a major difference in the description of the privilege itself.
*Commonwealth v. Hayes*, 544 Pa. 46, 674 A.2d 677, 680 (1996) (citation and footnote omitted). Long makes no claim that the state constitution's Self-incrimination Clause provides any greater right than its federal counterpart. He provides no separate analysis of the state constitutional provision. *See Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991). Moreover, the Pennsylvania Supreme Court has "concluded that in all instances other than the protection given by our Commonwealth's Constitution to reputation, the provision in Article I, § 9 against self-incrimination tracks its federal counterpart." *Commonwealth v. Morley*, 545 Pa. 420, 681 A.2d 1254, 1258 (1996) (citing *Commonwealth v. Swinehart*, 541 Pa. 500, 664 A.2d 957, 962–65 (1995)). Earlier, our Supreme Court had said that "the privilege against compulsory self-incrimination contained in the Pennsylvania Constitution is coextensive with that of

the federal constitution and is governed by federal standard." *Commonwealth Dept. of Env. Res. v. Marra*, 527 Pa.526, 594 A.2d 646 n. 2 (1991) (citing *Commonwealth v. Carrera*, 424 Pa. 551, 227 A.2d 627 (1967)). While this statement was subsequently questioned in *Swinehart*, 664 A.2d at 965 n. 11, any doubt about its vitality was laid to rest in *Morley*. Accordingly, our discussion is equally applicable to both constitutional clauses.

3. Section 1025 Duty to Stop in event of Accident:

(a) Any driver of any vehicle involved in an accident, resulting in injury or death to any person or damage to property, shall immediately stop such vehicle at the scene of such accident.

(b) The driver and owner, if present, of any vehicle involved in any accident, resulting in injury or death to any person or damage to property, shall [upon request] give his

¶ 15 Sections 3742 and 1025 both require a driver to stop at or near the scene of the accident and then require the driver to give the injured party his, name, address, and registration number. Additionally, section 3744 requires that if the driver cannot properly disclose the required information to the injured party, because of incapacitation, he must provide his name, address, and registration number to the police.

¶ 16 Our appellate courts have never addressed the constitutionality of the reporting requirements of sections 3742 and 3744 of the Act. However, there have been numerous challenges to the constitutionality of other mandatory reporting statutes in Pennsylvania. This Court has upheld the statute requiring the filing of income tax returns in the face of a self-incrimination challenge under Article I § 9. *City of Philadelphia v. Cline*, 158 Pa.Super. 179, 44 A.2d 610 (1945) (because the filing of income tax returns is not inherently criminal in nature, filing requirements are not unconstitutional).[4] In another more recent case, this Court applied the "required rec-

ords exception" to an Appellant's claim of privilege under the Fifth Amendment and Article 1 § 9 of the Pennsylvania Constitution. *Baehr*, 596 A.2d at 806. The appellant in *Baehr*, as administrator of an estate, challenged a contempt order forcing him to produce the records of the estate. We held that administration of an estate is subjected to extensive government regulation and that the purpose of the reporting requirement is generally regulatory and not intended to identify criminal activity, therefore, it is constitutional. *Id.* In doing so we relied on the explanation of this exception as set forth by the United States Supreme Court in *Shapiro v. United States*, 335 U.S. 1, 17, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948), and *Grosso v. United States*, 390 U.S. 62, 67–68, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968).

¶ 17 The United States Supreme Court addressed the issue of the constitutionality of mandatory reporting requirements of hit-and-run statutes when it found that the California statute was valid under a Fifth Amendment challenge. The California mandatory reporting requirements[5] are similar to Pennsylvania's reporting re-

name, address, and the registration number of his vehicle, and exhibit his operator's license to the person struck, or the driver or occupant's of any vehicle involved, or the owner or custodian of any property involved, unless the person struck, or the driver of the vehicle or the custodian of the property involved, signifies that no injuries have been received or damages sustained, and shall render to any person injured in such accident reasonable assistance, including the carrying of such person to a physician or surgeon for medical or surgical treatment, if it is apparent that such treatment is necessary, or is requested by the injured person.
75 P.S. § 1025, 1937, June 29 P.L. 2329 § 3.

4. *Cline* was decided before the United States Supreme Court announced that the Self-incrimination Clause of the Fifth Amendment was applicable to the States through the Fourteenth Amendment to the Constitution of

the United States. *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

5. § 20002. Duty where property damaged

(a) The driver of any vehicle involved in an accident resulting only in damage to any property, including vehicles, shall immediately stop the vehicle at the nearest location that will not impede traffic or otherwise jeopardize the safety of other motorists. Moving the vehicle in accordance with this subdivision does not affect the question of fault. The driver shall also immediately do either of the following:

(1) Locate and notify the owner or person in charge of that property of the name and address of the driver and owner of the vehicle involved and, upon locating the driver of any other vehicle involved or the owner or person in charge of any damaged property, upon being request-

quirements in that they, too, require a driver involved in a serious accident to stop and disclose his name, address and vehicle identification number. The Supreme Court plurality stated:

> Although identity, when made known, may lead to inquiry that in turn leads to arrest and charge, those developments depend on different factors and independent evidence. Here the compelled disclosure of identity could have led to a charge that might not have been made had the driver fled the scene; but this is true only in the same sense that a taxpayer can be charged on the basis of the contents of a tax return or failure to file an income tax form. There is no constitutional right to refuse to file an income tax return or to flee the scene of an accident in order to avoid the possibility of legal involvement.

*California v. Byers*, 402 U.S. 424, 434, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971) (plurality) (only addressing the issue of hit-and-run in reference to property damage and not personal injury). Other jurisdictions, when addressing this issue, have extended *Byers* to accidents involving personal injury. These jurisdictions have held that their respective state statutes did not violate the Fifth Amendment. *Banks v. Commonwealth*, 217 Va. 527, 230 S.E.2d 256 (1976) (held statute valid even though result of reporting in this particular case was that appellant would incriminate himself because he was driving with a suspended license); *People v. Samuel*, 29 N.Y.2d 252, 327 N.Y.S.2d 321, 277 N.E.2d 381 (1971) (Appellants left scene of accident, statute was held constitutional). Both Virginia's [6] and New York's [7] hit-and-run statutes are analogous to §§ 3742 and 3744 of the Act,

---

ed, present his or her driver's license, and vehicle registration, to the other driver, property owner, or person in charge of that property. The information presented shall include the current residence address of the driver and of the registered owner. If the registered owner of an involved vehicle is present at the scene, he or she shall also, upon request, present his or her driver's license information, if available or other valid identification to the other involved parties.
Cal. Vehicle Code § 20002(a)(1)

**6.** '46.1—176.... (a) The driver of any vehicle involved in an accident in which a person is ... injured ... shall immediately stop as close to the scene of the accident as possible without obstructing traffic and report forthwith to the police authority; and, in addition, to the person ... injured if such person appears to be capable of understanding and retaining the information, or to the driver or some other occupant of the vehicle collided with ... his name, address, operator's or chauffeur's license number and the registration number of his vehicle. The driver shall also render reasonable assistance to any person injured in such accident, including the carrying of such injured person to a physi-

cian, surgeon or hospital for medical treatment if it is apparent that such treatment is necessary or is requested by the injured person.'

*Banks v. Commonwealth*, 217 Va. 527, 230 S.E.2d 256 (1976) (citing then Virginia Hit–and–Run statute, Va.Code Ann. § 46.1–176).

**7.** § 600. Leaving scene of an incident without reporting

2.a. Any person operating a motor vehicle who, knowing or having cause to know that personal injury has been caused to another person, due to an incident involving the motor vehicle operated by such person shall, before leaving the place where the said personal injury occurred, stop, exhibit his license and insurance identification card for such vehicle, when such card is required pursuant to articles six and eight of this chapter, and give his name, residence, including street and street number, insurance carrier and insurance identification information including but not limited to the number and effective dates of said individual's insurance policy and license number, to the injured party, if

in that they require a person involved in an accident to give the other driver their identification information, and if the other party is incapacitated, the driver must report the incident to the police. *Banks,* 230 S.E.2d at 257; *Samuel,* 29 N.Y.2d at 257, 327 N.Y.S.2d 321, 277 N.E.2d 381.

¶ 18 Numerous other jurisdictions have held that their respective hit-and-run statutes are constitutional in the face of a Fifth Amendment challenge. *State v. Adams,* 181 Ariz. 383, 891 P.2d 251 (App. 1995); *Creary v. State,* 663 P.2d 226 (Alaska Ct.App.1983); *State v. Melemai,* 64 Haw. 479, 643 P.2d 541 (1982); *State v. Greenberg,* 4 Kan.App.2d 403, 607 P.2d 530 (1980); *State v. Smyth,* 121 R.I. 188, 397 A.2d 497 (1979); *Trail v. State,* 552 S.W.2d 757 (Tenn.Cr.App.1976); *State v. Engstrom,* 79 Wash.2d 469, 487 P.2d 205 (1971); *Lamb v. State,* 488 P.2d 1295 (Okla.Crim.App.1971); *People v. Lucas,* 41 Ill.2d 370, 243 N.E.2d 228 (1968); *Commonwealth v. Joyce,* 326 Mass. 751, 97 N.E.2d 192 (1951); *Ule v. State,* 208 Ind. 255, 194 N.E. 140 (1935); *People v. Thompson,* 259 Mich. 109, 242 N.W. 857 (1932); *State v. Sterrin,* 78 N.H. 220, 98 A. 482 (1916).

■ ¶ 19 Long cites *Marchetti v. U.S.,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and *Grosso v. U.S.,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), for the proposition that reporting statutes violate the Fifth Amendment. Appellant's Brief at 21–22. *Marchetti* and *Grosso* were unique in that they both involved reporting of gambling profits. The Supreme Court plurality in *Byers* distinguished the situation presented in cases like *Marchetti* and *Grosso* and contrasted it with the mandated disclosures under the California hit-and-run statute as follows:

The California Supreme Court noted that [§ ] 20002(a)(1) was not intended to facilitate criminal convictions but to promote the satisfaction of civil liabilities arising from automobile accidents....

[Section] 20002(a)(1), like income tax laws, is directed at all persons—here all persons who drive automobiles in California.... Driving an automobile, unlike gambling, is a lawful activity. Moreover, it is not a criminal offense under California law to be a driver "involved in an accident." ... [M]ost accidents occur without creating criminal liability even if one or both of the drivers are guilty of negligence as a matter of tort law.

[D]isclosures with respect to automobile accidents simply do not entail the kind of substantial risk of self-incrimination involved in *Marchetti, Grosso,* and *Haynes v. United States,* 390 U.S. 85 [88 S.Ct. 722, 19 L.Ed.2d 923] (1968). Furthermore, the statutory purpose is noncriminal and self-reporting is indispensable to its fulfillment.

*Byers,* 402 U.S. at 430, 91 S.Ct. 1535 (citations omitted). The plurality further explained its reasoning in upholding the constitutionality of the California statute when

practical, and also to a police officer, or in the event that no police officer is in the vicinity of the place of said injury, then, he shall report said incident as soon as physically able to the nearest police station or judicial officer.

b. It shall be the duty of any member of a law enforcement agency who is at the scene of the accident to request the said operator or operators of the motor vehicles, when physically capable of doing so, to exchange the information required hereinabove and such member of a law enforcement agency shall assist such operator or operators in making such exchange of information in a reasonable and harmonious manner.

N.Y. Veh. & Traf. § 600. We note that the New York statute here reproduced reflects an amendment to that statute enacted after the decision in *Samuel.*

it opined that the type of information required to be given to police under a hit-and-run statute is "not of a testimonial nature in the sense of the Fifth Amendment Privilege" but rather for identification purposes only. *Id.* at 433, 91 S.Ct. 1535. Justice Harlan provided the critical fifth vote in *Byers* and concluded that the mandated disclosures required by the California statute did not contravene the Fifth Amendment. He distinguished *Marchetti* and *Grosso* from the disclosures compelled under the hit-and-run statute, observing:

In contrast, the "hit-and-run" statute in the present case predicates the duty to report on the occurrence of an event which cannot, without simply distorting the normal connotations of language, be characterized as "inherently suspect[.]" ... [T]he State has confined the portion of the scheme now before us ... to the minimal level of disclosure of information consistent with the use of compelled self-reporting in the regulation of driving behavior.... [T]he Court must take cognizance of the level of detail required in the reporting program as well as the circumstance giving rise to the duty to report[.] ... California's decision to compel Byers to stop after his accident and identify himself will not relieve the State of the duty to determine, entirely by virtue of its own investigation after the coerced stop, whether or not any aspect of Byer's behavior was criminal. Nor will it relieve the State of the duty to determine whether the accident which Byers was forced to admit involvement in was proximately related to the aspect of his driving behavior thought to be criminal.... [T]he State must still bear the burden of making the main evidentiary case against Byers as a violator of [§ ] 21750 of the California Vehicle Code.

*Id.*, at 456–58, 91 S.Ct. 1535 (Harlan, J., concurring).[8]

¶ 20 Our statute, while similar to those construed in *Byers, Banks* and *Samuel,* has one distinction. While our statute requires disclosure of the name and address of the driver involved in an accident, it also requires the driver, upon request, to exhibit his driver's license and information re-

---

8. Long observes that the California statute at issue in *Byers* pertained only to accidents involving property damage and that California had a separate mandatory reporting statute dealing with motor vehicle accidents involving personal injury or death. That statute, Long notes, contains a statutory use restriction on the disclosed information. Brief for Appellant, at 23. Though here we are dealing with a statute requiring mandatory disclosures of information resulting from an accident involving death, this distinction is of no consequence to our resolution of this issue. Both the plurality and the concurring justice in *Byers* recognized that the California Supreme Court had grafted a use prohibition onto the property damage-accident reporting statute at issue in *Byers* believing that earlier United States Supreme Court cases required it. The plurality explained: "We granted certiorari to assess the validity of the California Supreme Court's premise that without a use restric-

tion [the California hit-and-run statute] would violate the privilege against compulsory self-incrimination. We conclude that there is no conflict between the statute and the privilege." *Id.*, at 427, 91 S.Ct. 1535 (citation omitted). Justice Harlan, in concurring, reached the same conclusion, stating:

Considering the noncriminal governmental purpose in securing the information, the necessity of self-reporting as a means of securing the information, and the nature of the disclosures involved, I cannot say that the purposes of the Fifth Amendment warrant imposition of a use restriction as a condition on the enforcement of this statute.

*Id.*, at 458, 91 S.Ct. 1535 (Harlan, J., concurring). Accordingly, we reject any suggestion by Long that use immunity is a necessary predicate to any statute requiring mandatory self-reporting in the context of an accident involving personal injury.

lating to his financial responsibility. 75 Pa.C.S.A. § 3744(a). In *Byers,* the Court noted that mandated disclosures beyond name and address may have Fifth Amendment implications. *Id.,* at 434 n. 6, 91 S.Ct. 1535 (plurality); *id.,* at 458, 91 S.Ct. 1535 (Harlan, J., concurring). Since the Criminal Information charging Long, drawn in the language of section 3744(a), says he refused to provide "his name, address and the registration number of the vehicle he was driving, fail[ed] to exhibit his driver's license and proof of insurance," we must confront this issue. We conclude that this additional information does not implicate the privilege against self-incrimination.

¶ 21 In discussing the mandatory reporting requirements of section 3744, we have previously recognized that "the aim of the law was at preventing drivers from leaving the scene of an accident and trying to avoid their responsibilities." *Gosnell,* 476 A.2d at 47. These responsibilities, we have observed are both civil and criminal. *Latshaw,* 555 A.2d at 1351. In *Byers,* the plurality noted that the information required by the statute there at issue "merely provides the State and private parties with the driver's identity for, among other valid state needs, the study of causes of vehicle accidents and related purposes...." *Byers,* at 433, 91 S.Ct. 1535. In concluding that the statute did not violate the Fifth Amendment, the plurality concluded that "[t]here is no constitutional right ... to flee the scene of an accident in order to avoid the possibility of legal involvement." *Id.,* at 434, 91 S.Ct. 1535. Justice Harlan, in his concurring opinion, expanded on this notion of responsibility reflected in the California statute, saying:

> Thus the public regulation of driving behavior through a pattern of laws which includes compelled self-reporting to ensure financial responsibility for accidents and criminal sanctions to de-

ter dangerous driving entails genuine risks of self-incrimination from the driver's point of view. The conclusion that the Fifth Amendment extends to this regulatory scheme will impair the capacity of the State to pursue these objectives simultaneously. For compelled self-reporting is a necessary part of an effective scheme of assuring personal financial responsibility for automobile accidents. Undoubtedly, it can be argued that self-reporting is at least as necessary to an effective scheme of criminal law enforcement in this area. The fair response to that later contention may be that the purpose of the Fifth Amendment is to compel the State to opt for the less efficient methods of an "accusatorial" system. *But see Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). But it would not follow that the constitutional values protected by the "accusatorial" system, see infra, at 1548—1549, are of such overriding significance that they compel substantial sacrifices in the efficient pursuit of other governmental objectives in all situations where the pursuit of those objectives requires the disclosure of information which will undoubtedly significantly aid in criminal law enforcement.

*Id.,* at 448, 91 S.Ct. 1535.

¶ 22 The New York Supreme Court also explained, in upholding the New York statute in the face of a Fifth Amendment challenge:

> If indeed it be true that self-reporting in motor vehicle statute has been regarded by the Legislature as necessary to the regulatory scheme, and self-reporting on its face certainly seems to be, then the risk of incidental inculpation is a small price to pay for the use of the motor

vehicle by its operator or owner, just as the duties to report all income, inclusive of unlawful income, is a small price to pay for government. It is not too much, for example, to ask of a building owner using high-rise speedy elevators that he report periodically on its maintenance and occasions of malfunction, or that he do the same with respect to fire protections and the happening of fire and industrial accidents in his building. Nor should a physician be excused from reporting a death because he might be accused of criminal negligence. And certainly, it would be incongruous to assert that a motorist stopped for a moving violation of the traffic laws may not be required by penal sanctions or presumptions to produce his license and identify himself.[9]

Finally, the requirement of self-reporting to a lesser or higher degree in motor vehicle statutes is just about as old as the motor vehicle itself. While antiquity is not an infallible criterion for determining the scope of constitutional rights, traditional usage and understanding is helpful in defining the privilege against self incrimination (*Ullmann v. United States*, 350 U.S. 422, 438 [76 S.Ct. 497, 100 L.Ed. 511]). This must be so unless in this world which has few absolutes, constitutional rights and privileges are inflexible absolutes, even if they drive us to vehicular decimation.

*People v. Samuel*, 29 N.Y.2d 252, 258–64, 327 N.Y.S.2d 321, 277 N.E.2d 381 (1971).

■ ¶ 23 Section 3744 is part of our Vehicle Code. "[T]he police powers of this Commonwealth are particularly broad in matters pertaining to highway safety." *Commonwealth v. Tarbert*, 517 Pa. 277, 535 A.2d 1035, 1045 (1987) (plurality). For

this proposition the *Tarbert* plurality relied on *Maurer v. Boardman*, 336 Pa. 17, 7 A.2d 466 (1939), where the Court explained:

> The plenary power of the legislature so to regulate the use of the highways of the Commonwealth is of ancient standing. The regulation may not, of course, . . . violate fundamental rights guaranteed by our own Constitution. [The legislature] alone has the power to regulate the manner and circumstances under which automobiles may be operated upon the highways of the commonwealth. This power is vested in the Legislature, and is based, not only upon its right to control and regulate the use of the highways, but is buttressed by the inherent police power of the state.

*Id.* at 471–72 (citation and quotation omitted). *See also Hertz Drivurself Stations v. Siggins*, 359 Pa. 25, 58 A.2d 464, 475 (1948).

¶ 24 The requirements of section 3744 are consistent with these powers, particularly as they are designed to promote financial responsibility for traffic accidents. The fact that they may aid in criminal law enforcement does not alter this result. We hold, therefore, that the self-reporting requirements of sections 3742 and 3744 of the Act do not violate the constitutional self-incrimination clauses. The policy behind the hit-and-run statutes is not intended to compel a driver to incriminate himself, but rather to provide a way of allowing people to civilly recover for damages caused by a motor vehicle and to require drivers to render aid when there is an accident involving a personal injury. *See Latshaw; Gosnell*. The information required by these statutes is not testimo-

---

9. As noted above, the statute before the court in *Samuel* did not then require the driver to exhibit his or her insurance identification card as the current statute does. *See* n. 7, *supra*.

nial in nature but used instead, for identification and financial responsibility purposes. While there is the possibility that a driver may incriminate himself by remaining at the scene and providing this information, public policy dictates that the driver remain to provide immediate physical aid and to accept potential financial responsibility. These regulations do not violate any fundamental right guaranteed by the Fifth Amendment to the United States Constitution and Article I § 9 of the Pennsylvania Constitution. Thus, Long's argument that sections 3742 and 3744 of the Act are unconstitutional must fail as he has not earned his heavy burden of persuasion that they clearly, palpably and plainly violate the Constitution.

## C. Discretionary Aspects of Sentence

¶ 25 Long's final claim challenges the discretionary aspects of his sentence. Long claims that the sentencing court erred in using an element of the crime included in the offense gravity score as an aggravating factor. Appellant's Brief, at 6.

■ ¶ 26 The standard of review in sentencing matters is well settled:

[I]mposition of sentence is vested in the discretion of the sentencing court and will not be disturbed by an appellate court absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.... If the sentence is "not unreasonable," the appellate court must affirm.

*Commonwealth v. Griffin*, 804 A.2d 1, 7 (Pa.Super.2002) (citation omitted).

■ ¶ 27 A "challenge[ ] ... to the discretionary aspects of [a] sentence ... must be considered a petition for permission to appeal, as the right to appeal from the discretionary aspects of sentencing is not absolute." *Commonwealth v. Wellor*, 731 A.2d 152, 154 (Pa.Super.1999) (citation omitted). Two requirements must be met before we will review this challenge on its merits. First, Long must, "set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." Pa.R.A.P. 2119(f); *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987). Long's brief contains a 2119(f) Statement, and therefore, he has met the first requirement.

¶ 28 Second, Long must show, "that there is a substantial question that the sentence imposed is not appropriate under this chapter." 42 Pa.C.S.A. § 9781(b); *Commonwealth v. Urrutia*, 439 Pa.Super. 227, 653 A.2d 706, 710 (1995), *appeal denied*, 541 Pa. 625, 661 A.2d 873 (1995). Long claims that the trial court considered impermissible factors in its sentencing decision. Appellant's Brief, at 25. This Court has held that a claim that the sentence is excessive because the trial court relied on impermissible factors raises a substantial question. *Commonwealth v. Simpson*, 829 A.2d 334 (Pa.Super.2003) (citations omitted). Therefore, we will review his claim.

■ ¶ 29 Long argues that his sentence was in violation of the fundamental norms which underlie the sentencing process because the court relied on the fact that he waited four days to report the accident when sentencing him in the aggravated range. This same delay was an element of Long's offense in violating the hit-and-run statute. Appellant's Brief, at 25.

■ ¶ 30 This Court had held that, "[i]t is impermissible for a court to consider factors already included within the sentencing guidelines as the sole reason for increasing or decreasing a sentence to the aggravated or mitigated range". *Commonwealth v. Simpson*, 2003 WL 21576463, at *3 (Pa.Super. July 11, 2003). However, "[t]rial courts are permitted to use prior conviction history and other factors already included in the guidelines if, they are used to supplement other extraneous sentencing information." *Id.*

¶ 31 In the case *sub judice*, the court considered not only Long's reporting delay, but Long's pre-sentence report and the letter from Long's mother. The court also considered as a mitigating factor the fact that "you did call that night and you did turn yourself in eventually." Sentencing, 5/21/02, at 7. Thus, we find that the trial court's consideration of the fact of Long's delay in reporting the accident was made in conjunction with other factors. It was not the sole factor in his determination, but rather one of several factors properly considered when sentencing Long.

### III. CONCLUSION

¶ 32 Long was convicted by a jury of violating sections 3742 and 3744 of Pennsylvania's hit-and-run statute. The Act requires that a driver involved in an accident where a serious injury or death has occurred must stop, render aid if necessary, and provide identification to either the victim or the police. Given the public's legitimate and recognized interest in ensuring that drivers remain at the scene of an accident and accept their responsibilities, both humanitarian and financial, we hold that the regulatory requirements of sections 3742 and 3744 of the Commonwealth's hit-and-run statute do not contravene the privilege against self-incrimina-tion and are constitutional under Article 1 § 9 of the Pennsylvania Constitution and under the Fifth Amendment of the U.S. Constitution. We also hold that Long's four-day delay in providing identification constituted a violation of the Act, and that there was sufficient evidence presented to sustain the conviction. Finally, we hold that Long's delay in reporting the accident was only one of several factors properly considered by the trial court in sentencing Long.

¶ 33 Judgment of sentence affirmed.